THE STATE, EX REL. KOHR ET AL., *v.* HOOKER ET AL.

(No. 855—Decided August 20, 1958.)

*Messrs. Lamneck & Johnson,* for relators.
*Mr. Scott Harrison,* for respondents.

McLAUGHLIN, J. This is an action for a writ of mandamus originating in this court. It comes about by reason of the merger of Mill Local School District with the Uhrichsville City School District in Tuscarawas County.

Since the question is presented to this court by demurrer, all well pleaded allegations must be taken as true. Paragraphs 7, 8 and 11 of the petition are especially to be noticed.

Paragraphs 7, 8 and 11 of the petition, we quote:

"VII. That each plaintiff-relator received under date of April 10, 1958 over the signatures of S. J. Mahaffey, President, and Lucille Born, Clerk of the Board of Education of Mill Local School District a letter advising them as follows:

" 'Dear Miss Kohr:

" 'This is to notify you that after July 1, 1958, the Board of Education of Mill Township will cease to exist and will be legally merged with the Uhrichsville City School District. Under the circumstances, it is my duty to notify you that your employment with the Board of Education of Mill Township will terminate as of July 1, 1958.

" 'Please consider your contract and employment terminated as of July 1, 1958, by the Board of Education of Mill Township.

" 'The board appreciates your services and cooperation and we regret the termination of the contract.

" 'Respectfully'

"That the above letter was sent to all of the teachers of the Mill Local School District.

"VIII. That since the merger of the Mill Local School District into the Uhrichsville City School District no reduction in the number of teachers has been necessary."

"XI. That at all times the defendants-respondents in their attempt to dismiss the plaintiffs-relators from their positions have failed to follow the provisions of the Teachers' Tenure Act and deprived them of their rights thereunder."

Relators are two teachers in the former Mill Local School District. Both have attained more than seventy years of age and have more than thirty-six years of service credit.

Respondents are members of the school board of the Uhrichsville City School District.

The petition also alleges that relators have been and are now ready and willing to assume their duties as teachers and that they have been advised on July 22nd and on other previous occasions, by respondents, that they could not do so.

Mandamus is a high prerogative writ to be issued at the discretion of the court, when it is clearly shown that there is a plain dereliction of duty by public officers. (*State, ex rel. Van Harlingen*, v. *Bd. of Edn.*, 104 Ohio St., 362, 136 N. E., 196). It will issue when a clear right thereto appears and when there is no plain and adequate remedy at law. Sections 2731.01 to 2731.05, Revised Code.

If these relator teachers are entitled to continue in their positions, they are entitled to the benefits that may accrue by way of retirement income, or otherwise, from more service credit. We are aware of no legal remedy except mandamus that would be adequate to continue them as teachers.

The Teachers' Tenure Act of this state was enacted in 1941. It was modeled after similar acts of other states, particularly Indiana and Pennsylvania, whose Supreme Courts have spoken, in actions similar to the one at bar, that mandamus is the proper remedy and that teachers similarly situated have no other adequate remedy at law.

"A public school teacher who has a fixed statutory tenure or can be removed only for certain causes prescribed by statute may enforce her right to reinstatement by an action of mandate if she has been removed from her position in violation of her statutory rights." *School City of Elwood* v. *State, ex rel. Griffin*, 203 Ind., 626, 180 N. E., 471, 81 A. L. R., 1027.

"As the school boards were given no discretion in the execution of these contracts, *mandamus was unquestionably the proper proceeding* to compel the school directors to perform their statutory duty." (Emphasis added.) *Teachers' Tenure Act Cases*, 329 Pa., 213, 222, 197 A., 344.

Ohio has recognized the propriety of mandamus in similar cases. See *State, ex rel. Bishop*, v. *Bd. of Edn.*, 139 Ohio St., 427, 40 N. E. (2d), 913; *State, ex rel. Frank*, v. *Meigs County Bd. of Edn.*, 140 Ohio St., 381, 44 N. E. (2d), 455; *State, ex rel. Saltsman*, v. *Burton*, 154 Ohio St., 262, 95 N. E. (2d), 377.

Somewhat similar situations were presented in four consolidated cases before the Supreme Court, reported in 139 Ohio St., at page 427 (*State, ex rel. Bishop*, v. *Bd. of Edn., supra*). That decision was handed down soon after the Teachers' Tenure Act became effective September 1, 1941.

In those cases writs of mandamus were caused to be issued as against four different employing school boards, ordering them to tender continuing contracts to the teacher who, at the time of the passage of the Act, is completing five or more consecutive years of employment. All four of the teacher-relators therein were found to be completing such terms of service and by operation of law entitled to continuing contracts under the mandatory terms of the Teachers' Tenure Act.

At the outset attention is directed to the now universally recognized principle that the Teachers' Tenure Act should be liberally construed in favor of the teachers and the corollary principle of strict construction as against their employing school boards.

Judge Zimmerman in his opinion in the *Bishop case, supra* (139 Ohio St., 427), said of the Teachers' Tenure Act:

"Such legislation bears a resemblance to the older civil service laws."

Recognizing such resemblance we go to Ohio case law as to the use of mandamus actions to restore such civil service officers to their positions.

The leading Ohio case thereon is *State, ex rel. Brittain,* v. *Board of Agriculture,* 95 Ohio St., 276, 116 N. E., 459. In that case a writ of mandamus was granted. The claim was made therein that relator had an adequate remedy at law in that Section 486-17a, General Code (now Section 143.27, Revised Code), provided for an appeal.

The ruling of the court is epitomized in the second and third paragraphs of the syllabus as follows:

"2. The provisions of that section do not confer upon the commission authority to hear an appeal from an order of removal made by an appointing authority, where the employee has not been furnished its reason for the removal.

"3. The provision of Section 486-17a, General Code, that in all cases of removal the appointing authority shall furnish the employee its reasons for the order of removal, is mandatory and the failure of the appointing authority to comply with this provision is fatal to such order and the same is a nullity."

In the case of *State, ex rel. Harris, Chief of Police,* v. *Haynes, Mayor,* 157 Ohio St., 214, 105 N. E. (2d), 53, Judge

Taft distinguishes but does not overrule the *Brittain case* because "no reason whatever" was stated in its order of removal.

In the instant case it is likewise claimed that relators here had an adequate remedy at law in that Section 3319.16, Revised Code, provides for an appeal. Such contention is based upon the premise that the letter from the Mill Local School District Board above quoted was sufficient and valid as an "order of termination of contract." It follows that if that letter was insufficient, invalid and a nullity as such order, there is no right of appeal therefrom.

The following language by Newman, J., at page 283 of the *Brittain case, supra* (95 Ohio St.), is pertinent:

"The purpose of the civil service law is to continue in positions those who are efficient, faithful and trustworthy. By force of the provisions of the section we have quoted the relator was entitled to hold his position during good behavior and efficient service. The defendant in error could remove him, but there was a limitation on the power to remove. There must have existed one or more of the grounds enumerated in the statute before an order of removal could be made, and, then, the process for removal as therein prescribed must have been followed."

By analogy, the purpose of the Teachers' Tenure Act is "protection of those established and qualified in the teaching profession," and by force of its provisions relators are entitled to hold their positions and have continuing service status. The employing board could remove them, but there are limitations upon its power to retire, terminate or suspend. The provisions of the Act enumerate and prescribe the process for retirement, termination or suspension.

Most of the questions raised here are resolved by simple reference to, and application of, specific sections of the Teachers' Tenure Act.

Sections 3319.08 through 3319.18, Revised Code, contain all the provisions of the Teachers' Tenure Act. These provisions were contained in former Sections 7690-1 through 7690-8, General Code (later Sections 4842-7 to 4842-14, inclusive, General Code).

First, Section 3319.18, Revised Code, answers the question

about the status of relators as teachers after the merger and specifically tells us that the merger did not terminate their contracts.

"If an entire school district or that part of a school district which comprises the territory in which a school is situated is transferred to any other district, or if a new school district is created, the teachers in such districts or schools employed on continuing contracts immediately prior to such transfer, or creation shall, subject to Section 3319.17 of the Revised Code, have continuing service status in the newly created district, or in the district to which the territory is transferred."

And subsection (C) of Section 3319.09, Revised Code, defines "continuing service status" by saying that it "for a teacher means employment under a continuing contract."

A continuing contract is defined by Section 3319.08, Revised Code, as follows:

"* * * A continuing contract is a contract which shall remain in effect until the teacher resigns, elects to retire, or is retired pursuant to Section 3307.37 of the Revised Code, or until it is terminated or suspended * * *."

Therefore, relators have continuing service contract status with the Uhrichsville City School District, which means employment with the Uhrichsville City School District under a continuing contract, subject to the provisions of Section 3319.17, Revised Code.

The relators having such employment, the Uhrichsville City School District Board becomes the employing board mentioned in Section 3319.16, Revised Code, applicable parts of which are as follows:

"The contract of a teacher may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. Before terminating any contract, the *employing board* shall furnish the teacher a written notice signed by its clerk of its intention to consider the termination of his contract with full specification of the grounds for such consideration. * * *" (Emphasis added.)

The question as to whether the Uhrichsville City School District Board becomes the employing board mentioned in this

section has given us some concern, and it might be said that relators' whole position is dependent upon our conclusions thereon.

We have arrived at this position by reason of the fact that we must assume that the Uhrichsville City School District Board knew positively that its district was going to be merged with the Mill Local School District and that they had this knowledge at least on April 10, 1958, which is the date of the Mill Local School District's letter above quoted, and that they had knowledge that these relators had continuing contracts, the benefits and detriments of which the Uhrichsville City School District Board must assume, come July 1, 1958.

Let us suppose that the Mill Local School District had obligated itself upon a note or bond, which was to run for the same period of time. Could it be doubted that the Uhrichsville City School District would, by operation of law, become obligated thereon? This obligation could have been revoked by retiring the relators for superannuation, pursuant to Section 3307.37, Revised Code, in much the same manner as an infant may revoke before attaining majority, but unless the infant does revoke he is bound.

To use another analogy, several sections of the Revised Code pertaining to the transfer of property (Sections 3311.22, 3311.23 and 3311.24) provide that when transfer of territory from one school district to another is complete, "the legal title of the school property in the territory transferred shall be vested in the board of education of the school district to which the territory is transferred."

Can it be doubted that once the merger is ordered the school district to which the territory is to be transferred acquires a definite interest in and responsibility for all school property in the territory transferred?

The Uhrichsville City School District, as the employing board of these relators, had the duty to notify them of its intention to cause the termination of their contracts. This termination could have been either by complying with the provisions of Section 3319.16, Revised Code, above quoted, or it could have easily been done under the express provisions of Section 3307.37, Revised Code, which provides as follows:

"Any teacher, except a new entrant with less than five years of service, who has attained sixty years of age or who has thirty-six years of service credit may retire, if a member, by filing with the state teachers retirement board an application for retirement. An employer may as of the thirtieth day of June of any year terminate the contract or the employment of any member who has attained the age of seventy or who will attain the age of seventy by the following thirty-first day of August."

Sections 3307.37 and 3319.08 through 3319.18, Revised Code, must all be construed *in pari materia* so as to give effect to each and every word of each section.

The Uhrichsville City School District Board "in their attempt to dismiss plaintiff-relators from their positions" had the mandatory duty to notify them of its intention to cause a termination of their contracts. Since these contracts were continuous, under the law they could be terminated in three ways:

(a) By retirement for superannuation under Section 3307.37, Revised Code;

(b) By termination for cause under Section 3319.16, Revised Code; or

(c) By suspension for reduction in number of teachers under Section 3319.17, Revised Code.

The demurrer causes us to assume the truth of the allegation in the petition that "since the merger no reduction in the number of teachers has been necessary." Therefore, (c) can be eliminated from our consideration, leaving only (a) and (b).

(a) Under Section 3307.37, Revised Code, the superannuation statute, "An employer may as of the thirtieth day of June of any year terminate the contract or employment of any member" (for superannuation). The General Assembly must have had some purpose in fixing and naming this date of the 30th day of June in this particular statute, and since teachers' contracts, by law (Section 3313.62, Revised Code), begin on July 1st and end on the following June 30th, it is only logical to assume and hold that the employing board, if they intended to retire these teachers for superannuation under this statute,

could and must do so by giving notice to that effect to the teacher on or before June 30th. Otherwise these words in this statute have no meaning whatsoever.

The use of the phrase "as of" when the Legislature might have said "before" or "prior to" obscures the real meaning somewhat. But again assuming that the use of the words "*as of*" was for a definite purpose, we think the Legislature thereby intended to protect teachers from being retired for superannuation during a school year. To interpret these words in any other way is to say that the Legislature intended that a teacher could be retired for superannuation at any time during a school year, dating her retirement back as of the beginning of the school year, which would be absurd.

We hold that the retirement notice under Section 3307.37, Revised Code, must be given on or before June 30th. Otherwise the continuing contracts of the teacher remain in full force and effect for another year.

(b) We note that Section 3319.16, Revised Code, provides for terminating a teacher's contract for cause. (Gross inefficiency or immorality; for wilful and persistent violation of reasonable regulations of the board of education; or for other good and just cause.)

This is the other method that this employing board of the Uhrichsville City School District could have employed "in their attempt to dismiss the plaintiff-relators from their positions." But here again we find a failure to follow the provisions of the Teachers' Tenure Act, in that no notice was given to either of these relators, as provided in Section 3319.16, Revised Code, which specifies that the employing board shall furnish the teacher a written notice signed by its clerk of its intention to consider the termination of its contract with full specification of the ground.

This particular section (3319.16) also provides for a hearing after written notice and specification of grounds is given, and from that hearing, if the result is adverse to the teacher's interest, he may appeal to the Common Pleas Court. This is an appeal from an order of termination, which can only come after a hearing. Therefore, it can not, by any stretch of the

imagination, be held to constitute an adequate remedy at law or right of appeal from anything except a definite order of the employing board terminating the teacher's continuing contract.

The position is unassailable that notice above quoted by the Mill Township School District was not sufficient to terminate these continuing contracts of these teachers, for the following reasons:

(1) That notice was sent to all the teachers of Mill District, whether they held continuing contracts or not, and irrespective of age. Consequently, it can not be construed as a superannuation retirement notice.

(2) If it was purportedly drawn under Section 3319.16, Revised Code, it is defective because it is not a notice of intention as required and does not give full specifications.

In either event, it is void because it purported to cover the school year 1958 and 1959, under which, by operation of law (Section 3319.18, Revised Code) the Uhrichsville City School District became the employer. Consequently, we must look to the actions of that board alone.

We hold that a retirement for superannuation under Section 3307.37, Revised Code, may be effected merely by giving notice, provided that notice be given prior to June 30th and that it is not necessary that a retirement under Section 3307.37 be in accordance with Section 3319.16, Revised Code, but if a contract is terminated, compliance with Section 3319.16 as to written notice and specification of cause is necessary.

In this particular case the employing board of the Uhrichsville City School District did not comply with the mandatory provisions of the Teachers' Tenure Act, either as to retirement or termination of contract.

The notice given by their former employing board of the Mill Local School District is insufficient to terminate the contracts of these relators, since it was not the employing board.

The relators' petition alleges that the respondent school board has failed to follow the provisions of the Teachers' Tenure Act in its attempt to dismiss relators.

The provisions of this Act are mandatory and are to be strictly construed in the teachers' favor.

Failure to notify these relators of intention to terminate

their contracts is a definite noncompliance with the mandatory provisions of the Teachers' Tenure Act and is a failure to perform duties clearly enjoined by the specific provisions thereof.

The demurrer will be overruled, and a writ of mandamus will issue, commanding respondents as members of the Board of Education of the Uhrichsville City School District to reinstate relators as teachers at its schools at a salary of $4,075 each for the ensuing school year of 1958-1959. No alernative writ as to payment of salary will be granted.

*Writ allowed*

PUTNAM, J., concurs.

McCLINTOCK, P. J., dissenting. This was an action filed originally in our court. The petition reads as follows:

"The petition of Maude I. Kohr and Vera M. Kohr respectfully represents:

"I. That there is now and has at all times hereinafter mentioned been in full force and effect in the state of Ohio, a statute known as the Teachers' Tenure Act, being known as Chapter 3319 of the Revised Code of Ohio.

"II. That the defendants-respondents are the duly elected, acting, and qualified members of the Board of Education of the Uhrichsville City School District, Uhrichsville, Ohio, in Tuscarawas County, Ohio.

"III. That said school district is a duly and legally organized school district.

"IV. That one of the plaintiffs-relators, Maude I. Kohr, aged 72 years, has been continuously employed by the Mill Local School District and the members of the said Mill Local Board of Education as a teacher since 1921; that her salary for the past school year was $4,330.00; that according to law the said Mill Local School District became part of the Uhrichsville City School District.

"V. That one of the plaintiffs-relators, Vera M. Kohr, aged 70 years, has been continuously employed by the Mill Local School District and the members of the said Mill Local Board of Education as a teacher since 1916; that her salary for

the past school year was $4,130.00; that according to law the said Mill Local School District became part of the Uhrichsville City School District.

"VI. That by reason of the length of their employment by the merged Mill Local Board of Education, the plaintiffs-relators were and are entitled to all the benefits for the provisions for contractual continued service as provided in the said Teachers' Tenure Act, which provides in part as follows:

"That the contract of a teacher may not be terminated except for cause, and then only after a written notice stating the grounds for said termination, and after an opportunity to defend has been given to the affected teacher or teachers.

"VII. That each plaintiff-relator received under date of April 10, 1958, over the signatures of S. J. Mahaffey, President, and Lucille Born, Clerk of the Board of Education of Mill Local School District a letter advising them as follows:

" 'Dear Miss Kohr:

" 'This is to notify you that after July 1, 1958, the Board of Education of Mill Township will cease to exist and will be legally merged with the Uhrichsville City School District. Under the circumstances, it is my duty to notify you that your employment with the Board of Education of Mill Township will terminate as of July 1, 1958.

" 'Please consider your contract and employment terminated as of July 1, 1958, by the Board of Education of Mill Township.

" 'The board appreciates your services and cooperation and we regret the termination of the contract.

" 'Respectfully.'

"That the above letter was sent to all of the teachers of the Mill Local School District.

"VIII. That since the merger of the Mill Local School District into the Uhrichsville City School District no reduction in the number of teachers has been necessary.

"IX. That the plaintiffs-relators on July 22, 1958, and several times previously thereto offered to resume their regular duties in the position for which they had been employed. At said time the plaintiffs-relators were denied the right to resume their positions and were advised by the Superintendent

and the Board of Education of the Uhrichsville City School District that they could not resume their duties.

"X. That plaintiffs-relators have been and are now ready and willing to assume their duties in the position for which they were employed, by the Board of Education of the Mill Local District, now merged with the Uhrichsville City School District. That the salary for each of these plaintiffs-relators for the ensuing school year would be $4,075.00.

"XI. That at all times the defendants-respondents in their attempt to dismiss the plaintiffs-relators from their positions have failed to follow the provisions of the Teachers' Tenure Act and deprived them of their rights thereunder.

"Wherefore, Maude I. Kohr and Vera M. Kohr pray that a writ of mandamus be issued by this court directed to Dean Hooker, member and President; Herman L. Morris, Clerk; Herbert L. Crites, member; John F. Milgate, member, and Kenneth L. Cook, member; as members of the Board of Education of the Uhrichsville City School District, Uhrichsville, Ohio, Tuscarawas County, Ohio, commanding them to reinstate them as teachers at Uhrichsville City School District, Uhrichsville, Tuscarawas County, Ohio, at a salary of four thousand seventy-five ($4,075.00) dollars each for the ensuing school year of 1958 and 1959; or in the alternative, directing them as said defendants-respondents to draw two warrants on the education fund in the amount of four thousand seventy-five ($4,075.00) dollars, payable to the order of each of these plaintiffs-relators in the event that said defendants-respondents do not permit said plaintiffs-relators to resume their positions in accordance with their contracts, immediately upon service of said writ."

To this petition the respondents filed a demurrer. The question before this court is whether that demurrer should be sustained. In a consideration of this case the demurrer searches the record.

Section 3319.16, Revised Code, in part, reads as follows:

"Any teacher affected by an order of termination of contract may appeal to the Court of Common Pleas of the county in which the school is located within thirty days after receipt of notice of the entry of such order. Such appeal shall be an

original action in said court and shall be commenced by the filing of a petition against such board, in which petition the facts shall be alleged upon which the teacher relies for a reversal or modification of such order of termination of contract. Upon service or waiver of summons in said appeal, such board shall forthwith transmit to the clerk of said court for filing a transcript of the original papers theretofore filed with said board and a certified transcript of all evidence adduced at the hearing or hearings before such board, whereupon the cause shall be at issue without further pleading and shall be advanced and heard without delay. The court shall examine the transcript and record of the hearing before the board and shall hold such additional hearings as it deems advisable, at which it may consider other evidence in addition to such transcript and record.''

This section of the Revised Code clearly provides the remedy of appeal for relators.

Section 2731.05 of the Revised Code provides as follows:

''The writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law.''

For authority I cite *State, ex rel. Brammer, v. Hayes, Clerk of Courts,* 164 Ohio St., 373, 374, 130 N. E. (2d), 795:

''Relator in the instant case had an adequate remedy in the ordinary course of law by way of appeal to this court from the judgment of the Court of Appeals reversing the judgment of the Court of Common Pleas. A writ of mandamus may not be invoked as a substitute for the remedy of appeal. *State, ex rel. City of Cincinnati,* v. *Moulton et al., Public Utilities Commission,* 160 Ohio St., 397, 116 N. E. (2d), 445; *State, ex rel. Stein,* v. *Sohngen, Dir.,* 147 Ohio St., 359, 71 N. E. (2d), 483; *State, ex rel. Blackburn,* v. *Court of Appeals,* 154 Ohio St., 237, 95 N. E. (2d), 273.''

I also cite *State, ex rel.,* v. *Crites, Auditor,* 48 Ohio St., 142, 26 N. E., 1052:

''1. In mandamus, as in civil actions, a general demurrer to the reply will search the record and put in issue the sufficiency of the petition.''

Also, *City of Mt. Vernon* v. *State, ex rel. Berry,* 71 Ohio St., 428, 73 N. E., 515:

"3. A controversy between the parties to a contract as to their respective rights under the contract cannot be determined in proceedings in mandamus."

Also, *State, ex rel. Howe Construction Co.,* v. *Moyer, Dir. of Dept. of Public Works,* 70 Ohio Law Abs., 246, 127 N. E. (2d), 777.

"3. Contract rights may not be determined in an action in mandamus but can only be settled in actions at law."

On page 247 of the *Howe case* it is said:

"It is well established that mandamus may be resorted to only when the right to the relief sought is clear. 25 O. Jur., 997, and cases cited. The duty must be actually ministerial at the time the application seeking its performance is made. *Summit County Board of Education* v. *State,* 115 Ohio St., 333. The respondent herein is vested with the discretionary power of determining whether or not the relator has complied with all of its contractual obligations. The contract rights may not be determined in mandamus but can only be settled in actions at law. *City of Mount Vernon* v. *State, ex rel. Berry,* 71 Ohio St., 428.

"The principle that an unliquidated claim will not be adjudicated in a mandamus proceeding is clearly set forth in 34 Amer. Jur., 943:

" 'The general rule that mandamus will not lie to enforce contract rights is held to be ground for denying a writ of mandamus to enforce a claim against a public corporation growing out of contract, where the performance of the contract by the relator and the amount and vitality of the claim are disputed.' "

Also, in 55 Corpus Juris Secundum, 85, Section 51, the text provides:

"The primary purpose or function of a writ of mandamus is to enforce an established right, and to enforce a corresponding imperative duty created or imposed by law. It is designed to promote justice; and, for the furtherance of justice, it is subject to certain well-defined qualifications. Its principal function is to command and execute, and not to inquire and adjudicate, and, therefore, it is not the purpose of the writ to establish a legal right, but to enforce one which has already been established."

See, also, *State, ex rel. Wilcox,* v. *Woldman, Dir.,* 157 Ohio St., 264, 105 N. E. (2d), 44; and *Williams, Dir.,* v. *State, ex rel. Gribben,* 127 Ohio St., 398, 188 N. E., 654, wherein the same legal principles are sustained.

I cite *State, ex rel. Harris, Chief of Police,* v. *Haynes, Mayor,* 157 Ohio St., 214, 105 N. E. (2d), 53, the syllabus of which is as follows:

"1. Where a mayor files with the city civil service commission what purports to be an order of removal of a chief of police and reasons therefor, and furnishes a copy thereof to such chief, and the chief within ten days after such order of removal files a motion with the commission raising the question whether his removal could be so accomplished, and the commission promptly renders a decision approving such action of the mayor, a writ of mandamus will not be issued to compel the reinstatement of such chief of police.

"2. In such an instance, assuming the facts are such that the proceedings for his removal should comply with Section 486-17a, General Code, and the proceedings actually taken for his removal did not comply therewith, the remedy of such chief of police is by appeal to the Common Pleas Court pursuant to the provisions of Section 486-17a, General Code.

"3. Where a party had a remedy by appeal, whether he exercised that remedy or not, he cannot ordinarily have the extraordinary remedy of mandamus to secure the same rights which he could have secured by such appeal.

"4. At the end of the probationary period provided for in Section 486-13, General Code, an appointing authority has the right to remove an appointee whose service has been unsatisfactory to such appointing authority. Such right of removal is subject only to the approval of the civil service commission.

"5. Any rights of the chief of police of a city to salary, for a period during which he was not paid because excluded from office by reason of a void suspension, may be asserted in an action at law against the city; and such chief is, therefore, not entitled to a writ of mandamus to enforce such rights."

On page 219 of the *Harris case* (157 Ohio St.) it is said:

"Section 486-17a, General Code, provides so far as material in this case:

" '*In* all *cases of removal* the *appointing authority shall furnish* such *employee* or subordinate *with* a *copy of the order of removal and* his *reasons for* the same, *and give* such officer, employee or subordinate a *reasonable time in which* to make and *file* an *explanation. Such order with* the *explanation, if any, of* the employee or *subordinate shall be filed with* the *commission.*' "

On page 220 of the *Harris case* the following appears:

"Much reliance is placed by relator upon *State, ex rel. Brittain,* v. *Board of Agriculture,* 95 Ohio St., 276, 116 N. E., 459. It is sufficient to state that in his letter of February 7 Mayor Haynes did state what purport to be reasons for his order of removal while 'no reason whatever' was stated in the order of removal in the *Brittain case.*

"In the instant case, the mayor furnished Harris a copy of what purports to be an 'order of removal and his reasons for the same' when he gave him a copy of the letter of February 7. Thereafter, Harris promptly appealed to the commission from that order by filing his motions with the commission. When the commission rendered its order of February 15, it certainly rendered a decision which appeared upon its face to be final so far as it affirmed the judgment of the mayor in terminating the services of Harris as chief of police. Thereafter, if, as relator contends, the provisions of Sections 486-17 and 486-17*a*, General Code, were applicable, those statutes certainly gave Harris a right of appeal from that decision of the commission to the Court of Common Pleas. *In re Fortune,* 138 Ohio St., 385, 35 N. E. (2d), 442. In our opinion the remedy made available to him by that statute was an adequate remedy. See *State, ex rel. Sidell,* v. *Cole, Dir.,* 147 Ohio St., 203, 206, 70 N. E. (2d), 451. Having had such a remedy, whether he exercised it or not, Harris cannot now have the extraordinary remedy of mandamus in this court to secure the same rights which he could have secured by appeal to the Common Pleas Court. See *State, ex rel. Basichis,* v. *Zangerle, Aud.,* 126 Ohio St., 118, 184 N. E., 289; *State, ex rel. Blackburn,* v. *Court of Appeals,* 154 Ohio St., 464, 96 N. E. (2d), 297."

And on page 223 of the *Harris case* (157 Ohio St.) we read as follows:

"The only question remaining is whether relator is entitled to the extraordinary writ of mandamus to compel the city to pay him the salary which he claims to be due him for the 15-day period during which Mayor Haynes endeavored to suspend him in January.

"It is not necessary for us to consider whether his claim in this respect is valid or not. If it is valid, it can be asserted in an action at law against the city of Newark. See *City of Cleveland* v. *Luttner*, 92 Ohio St., 493, 111 N. E., 280, relied upon by relator. Here again it appears that relator has an adequate remedy at law and is, therefore, not entitled to the extraordinary writ of mandamus to enforce any rights in this respect that he may have. *State, ex rel. Curtis*, v. *DeCorps*, 134 Ohio St., 295, 300, 16 N. E. (2d), 459; *State, ex rel. White*, v. *City of Cleveland*, 132 Ohio St., 111, 5 N. E. (2d), 331."

Section 3307.37, Revised Code, in part, reads as follows:

"* * * An employer may as of the thirtieth day of June of any year terminate the contract or the employment of any member who has attained the age of seventy or who will attain the age of seventy by the following thirty-first day of August."

Section 3313.62, Revised Code, reads as follows:

"The school year shall begin on the first day of July of each calendar year and close on the thirtieth day of June of the succeeding calendar year. A school week shall consist of five days, and a school month of four school weeks."

I also cite *State, ex rel. Adams*, v. *Rockwell*, 167 Ohio St., 15, 145 N. E. (2d), 665:

"*Per Curiam.* Section 2731.05, Revised Code, provides that 'the writ of mandamus must not be issued where there is a plain and adequate remedy in the ordinary course of the law.'

"This court has held in *State, ex rel. Libbey-Owens-Ford Glass Co.*, v. *Industrial Commission*, 162 Ohio St., 302, 123 N. E. (2d), 23, that 'before a writ of mandamus will be granted by the Supreme Court under its constitutional powers as contained in Section 2 of Article IV of the Ohio Constitution, a clear legal right thereto must be shown, and the burden of establishing such right is upon the relator'; and that 'a writ of mandamus will ordinarily be refused by the Supreme Court under

its constitutional powers unless the relator shows affirmatively that there is no plain and adequate remedy in the ordinary course of the law, *including equitable remedies.'* (Emphasis supplied.)

"The demurrer to the petition is sustained on the sole ground that there is another adequate ordinary remedy by way of injunction, and the petition is dismissed."

Prior to the merger of the school districts herein on April 10, 1958, the Mill Township board notified by letter the relators, Maude I. Kohr, aged seventy-two years, and her sister, Vera M. Kohr, aged seventy years, that their contracts of employment would terminate as of July 1, 1958.

Relators several times offered to resume their regular duties in the positions in which they had been employed by the Mill Township board, but were advised by the superintendent and board of education that they could not resume their duties.

It was absolutely necessary that the Mill Township Board of Education should notify the relators before July 1, 1958, that their contracts of employment would be terminated.

It would appear from the reading of the petition that the relators are attempting to force the Board of Education of the Uhrichsville City School District to re-employ them in the positions in which they served the Mill Township board, and that they are asking the court to control the judgment and discretion of the school board, and if it is only money that the Kohr sisters are seeking, there is an adequate remedy at law to sue on their contracts, which they allege in their petition.

In conclusion, for the reasons herein stated, I am of the opinion that the relators have an adequate remedy at law and are not entitled to the ordinary writ of mandamus to enforce their claims, and that the demurrer to the petition of the relators should be sustained and the petition dismissed.