108

(No. 887418—Decided March 18, 1974.)

Common Pleas Court of Cuyahoga County.

*Mr. Bernard A. Berkman,* for plaintiff.
*Mr. Sheldon P. Weitzman,* for defendant.

Friedman, J. The action before this court is an appeal under R. C. 3319.16, from a decision of the board of education of the Warrensville Heights School District terminating plaintiff's contract as superintendent of schools. Plaintiff was hired by the defendant board of education on May 20, 1968, for a definitive term of three years, commencing August 1, 1968, and ending July 31, 1971. The record in this case shows that at an informal meeting of the board, in which three members of the five member board participated, sought plaintiff's resignation. The plaintiff reluctantly agreed to submit his resignation, to be effective

July 31, 1970, but the board refused to extend such and advised plaintiff that his resignation was to be accepted forthwith. The plaintiff thereby withdrew his offer of resignation and the board drafted a list of approximately thirteen alleged major charges containing many subcharges and suspended him from his position pending the termination of his contract.

Pursuant to procedures in R. C. 3319.16, as it existed then, plaintiff requested a public hearing before the board and such commenced April 23, 1970.

On September 28, 1970, after over five months of proceedings containing approximately 11,000 pages of testimony and approximately 367 exhibits, the same three members of the board heretofore referred to, by a three to two vote, terminated plaintiff's contract retroactive to March 23, 1970. Plaintiff filed his appeal to this court on September 29, 1970.

There are three major issues presented to this court for its consideration:

(1) Was the majority group of the defendant board a biased tribunal, whose adjudication of the proceedings against plaintiff denied him a fair hearing required by due process and in violation of his basic constitutional rights?

(2) Were the charges as compiled against plaintiff so general and vague as not to be in compliance with R. C. 3319.16, and was plaintiff thereby deprived of due process?

(3) If plaintiff prevails, would he be entitled to reasonable attorney fees as against the defendant?

In answering these issues, a careful analysis of the record clearly demonstrates the following.

The record discloses, as aforementioned, that there was approximately five months of testimony consisting of thirty-nine volumes which testimony had little to do with the compliance and propriety of plaintiff's performance as superintendent of the school sysem of Warrensville Heights School District. The testimony further disclosed that the relationship between plaintiff and the defendant board at the outset was so satisfactory that an increase, in the amount of $3,000, was given to the plaintiff, from his fixed

agreed salary, after his first year of service.

Throughout the proceedings alluded to, there appears an obvious prejudice and bias on the part of the three members of the five member board against the plaintiff. The three member panel not only investigated and prosecuted, but also appeared as the primary witnesses and then proceeded to make a judgment against plaintiff. The record is clear that many attempts were made by plaintiff's counsel, prior to and during the proceedings, to disqualify the three members who evidenced bias and prejudice and that his motions, when made, were turned down by a three to two vote of the board. The record also discloses that the three members of the board had indicated that they had decided at all costs, prior to the hearing on the charges, to get the plaintiff out of the community as superintendent of the school. Plaintiff asserts that the proceedings clearly demonstrated that the three members of the board which represented the majority with the power of final decision constituted a biased tribunal resulting in a denial of a fair hearing required by due process of law.

As already stated, the Warrensville Heights school board was divided into two factions—majority and minority. The majority presided over the hearing throughout the period and made the decision against the plaintiff.

The question here revolves not around whether the board members had any pre-conceived opinions about the questions involved, but whether or not plaintiff was able to obtain a fair and impartial hearing consistent with the principles of substantive due process.

The contention of the defendant, in one of its reply briefs, that a tribunal such as the Board of Education of Warrensville Heights could be biased and could conduct a hearing with relation to charges and not violate the principle of due process as contended by plaintiff is repugnant to the very fiber of our judicial structure. There is a wide area of difference between having an opinion and having bias. Opinions may be laid aside. Bias is so deeply structured in the person that fairness is impossible.

The school board is an arm of the government and properly should be responsive to the needs and require-

ments of the students and the community that it serves. The line to be drawn between bias and pure public concern and awareness of the needs of the community is many times one of fine distinction and sometimes difficult to determine.

Each member of the school board has a duty to promote that which he believes to be the activities in the best interest of the school system. The difficulty in this particular instance is that the investigative and prosecutorial body —namely, the board majority of three—was also the body that was required by R. C. 3319.16 to preside at the hearing which would consider the charges and ultimately cast its vote of dismissal or reinstatement. The foregoing statute has since been revised, in the good judgment of our legislature, to allow a choice of an independent referee.

Administrative agencies are not held to the same standard of procedural due process as a court of law would be. Agencies are not always composed of persons with legal training. They are established because of their expertise in certain areas and therefore better able to determine whether a person is functioning in a proper manner. In 2 American Jurisprudence 2d 166, Administrative Law, Section 353, it is stated:

"In administrative proceedings of a judicial or quasi-judicial character, the liberty and property of the citizen must be protected by the observance of the rudimentary requirements of fair play. Whether a person has been deprived of due process of law by the action of an administrative agency depends upon whether it acted contrary to the statutes and rules and with arbitrary and unreasonable discrimination."

It is also stated in 2 American Jurisprudence 2d 221, Administrative Law, Section 412, that if the elements constituting a fair, open and impartial hearing are absent from the proceedings, the hearing is void.

In regard to the requirements of fairness and impartiality, 16 Ohio Jur. 2d §582 states:

"* * * and a statute which compels a litigant to submit his controversy to a tribunal of which his adversary is a member does not afford due process of law."

In accordance with the decisions of various jurisdic-

112

tions and the Supreme Court of the United States, an unbiased tribunal is a constitutional necessity in a quasi-judicial hearing, and a denial of the same is a denial of due process. *Ward* v. *Village of Monroeville*, 93 S. Ct. 80; *Tumey* v. *Ohio*, 273 U. S. 510; *In re Murchison*, 349 U. S. 133. The requirement of an impartial tribunal applies to administrative proceedings no less than criminal trials. *Goldberg* v. *Kelly*, 397 U. S. 254.

One who investigates and then proceeds to prosecute and furthermore proceeds to act as a witness in the prosecution cannot and should not proceed in judgment upon the evidence so obtained. *United States, ex rel. McCans,* v. *Armour & Co.* (D. C. Cir. 1958), 254 F. 2d 90 states:

"the fundamental requirements of fairness in the performance of (quasi-judicial) functions require at least that one who participates in a case in behalf of any party, whether actively or merely formally by being on pleadings or briefs, take no part in the decision of that case by any tribunal on which he may thereafter sit."

It is regretful that when the defendant board had the opportunity upon the request of the plaintiff to remove itself from hearing any of the charges that it brought against the plaintiff, it did not do so. It could have availed itself, under R. C. 3313.85, of the procedure for submitting the charges to the Probate Court for a hearing. As this court has stated, and repeats, that at the outset of the hearing plaintiff made every effort to disqualify those who demonstrated pre-judgment and was turned down every time when such requests were made.

Throughout the proceedings, there seemed to be confusion in the manner of presentation—a refusal to follow orderly procedure. Practically every objection raised by the plaintiff, the record discloses, was overruled. One of the majority of three characterized plaintiff's counsel's objection as "horse shit." That persons sitting in a quasi-judicial capacity should use language of the gutter in answer to an attorney's objection during the course of a proceeding shocks this court's conscience.

As heretofore stated, plaintiff strongly argues that

the charges, as contained in the record, that were presented to the plaintiff by the three-member board were so vague as to be indefensible, and he cited, as his authority, among the many cases, *State, ex rel. Kohr*, v. *Hooker*, 106 Ohio App. 1.

This court has given careful consideration to R. C. 3319.16, which provides, in part:

"Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its clerk of its intention to consider the termination of his contract *with full specification of the grounds for such consideration.*" (Emphasis added.)

In the case of *State, ex rel. Kohr*, v. *Hooker, supra*, the court, in interpreting such provision required that the specifications must be clear and fully set forth. It was also stated that the specifications must bring forth the contention that there has been a willful and persistent violation of reasonable regulations of the board of education before any charges may be made against an individual. The board in this case, in submitting the various charges, made the following complaints.

As to the first charge, it was alleged that the plaintiff failed to present curriculum reports. The record discloses that the plaintiff did advise board members of the curriculum by means of newsletters, and there was no specific charge of radical curriculum changes of which the board members had no notice.

The second noted violation is broken down into several parts dealing with a failure to implement and execute all policies adopted by the board. The record discloses that there has been no showing that the board was ever unanimous about anything and therefore the question must be one of reasonably following directives. Items such as generally stating discipline rationale are not susceptible of defense as specific failures were not mentioned. The change in data processing apparently improved service and cut costs and was not clearly beyond the power of the school superintendent. Items such as thefts of school property are more ministerial than the topic of full admin-

istrative reports and proceedings. The allegation of a failure to follow recruitment procedure did not specify a lack of qualified teachers or specifically unqualified ones being employed.

Under the charge against plaintiff, entitled "For Other Good Causes Shown," Items 1, 2 and 4 deal with public remarks relating to the differences with the school board. Since the school board members' views were also aired in the news media, and since the school board admits there were differences, this charge appears to be an attempt to make improper statements that were responsive and proper when evaluated in the context of the surrounding circumstances.

Item 3, alleging an attempt to create animosity by the teaching staff to the board of education, is without substantiation in the testimony elicited.

Items 5 and 6 deal with the usurpation of powers and the interjection of philosophies inconsistent with the Board of Education of Warrensville Heights. The powers and philosophies here were never listed or specified and certainly cannot be defended against as they are speculative.

Item 7 refers to the creation of a situation making future service impossible, relating to events since February, 1970, in the item, and an attempt to introduce a political aspect. Here the board was the body to introduce the situation with its political overtones. On March 16, 1970, as plaintiff stated, plaintiff offered his resignation effective July 31, 1970. His resignation was accepted immediately by the board. The plaintiff then withdrew his resignation, a resignation which had been specifically requested by the board majority and a list of charges was filed.

Item 8 lists plaintiff's failure to speak out against the teachers' boycott in March, 1970. How can this even be considered as nonfeasance when his resignation was informally requested on March 9, 1970?

Item 9 of the charges generally refers to a lack of discipline, but is extremely vague and unsupported by testimony as to the actual state of discipline in the school system. No specifics are included and, therefore, this item

charged stands as vague and unsubstantiated.

Item 10 purports to refer to false statements made to the *Cleveland Press*. This item appears to be the result of a misreading of the statement or taking it out of context, and as such it is certainly not the proper subject of a formal charge against a school superintendent.

Item 11 of the charges deals with an open letter about which there is no testimony that the plaintiff knew or could have known. There is no basis for this charge in fact.

Item 12 is so vague as to be patently offensive, referring to a disregard and degradation of the Warrensville Heights school system during the month of March, 1970, and again there are no specifics.

Item 13 of the charges would have plaintiff constrained from writing a book without prior board approval. Since the book was started prior to plaintiff Sorin's entry into the Warrensville Heights school system and nothing specifically objectionable was found to be in it, the mere fact of writing a book and publishing it is not sufficient ground for a formal charge.

After a careful consideration of the charges contained in this matter, it is the opinion of this court that the charges taken one at a time or collectively are for the most part so vague and unanswerable as to set forth generalities and not specific specifications of which the plaintiff could answer; consequently, they are not in accordance with the requirements contained in R. C. 3319.16, as interpreted in the case of *State, ex rel. Kohr,* v. *Hooker, supra.* See, also, *Perry* v. *Sindermann,* 408 U. S. 593.

As stated, R. C. 3319.16 requires full specifications of the grounds for the termination of a contract, and a notice that lacks such specification is defective. The failure to do so deprives an individual of the essential elements of due process stated in *Goldberg* v. *Kelly,* 397 U. S. 254, which held that minimum procedural safeguards are required in an administrative proceeding.

Employment in public education is a protected interest which cannot be terminated without adequate and proper notice and a hearing consistent with due process. *Perry* v.

*Sindermann*, 408 U. S. 593. In *Hale* v. *Board of Education*, 13 Ohio St. 2d 92, paragraph one of the syllabus states:

"The Common Pleas Court may reverse an order of termination of a teacher's contract * * * where it finds such order is not supported by or is against the weight of the evidence."

In the *Hale* case, the court, in construing "other good and just cause," stated:

"* * * [w]e note that they are used with the words 'gross inefficiency and immorality' and 'wilful and persistent violations' of board regulations. In our opinion, this indicates a legislative intention that the 'other good and just cause' be a fairly serious matter."

Again, referring to R. C. 3319.16, which governs the causes for which a superintendent's contract may be terminated during its term, provides, in part:

"The contract of a teacher may not be terminated except for gross inefficiency or immorality; for willful and persistent violation of reasonable regulations of the board of education or for other good and just cause."

It is, therefore, this court's opinion, in reviewing all matters contained in the record, that:

(1) The board which made the decision exemplified a tragic situation where bias prejudice eminated prior to the proceeding conducted throughout the course of presentation of the evidence and the charges that were filed against plaintiff were merely a facade to cover the prejudgment determined prior to its filing;

(2) The charges that were drafted by the majority of the board were vague, general, not specific and therefore not in compliance with the statute, thus depriving the plaintiff of the required due process that he was entitled to under the law.

For the reasons aforestated, judgment is rendered in favor of the plaintiff for the full salary and contract benefits for the period of suspension less any funds earned by him during said period in the like or similar capacity in the educational field and costs. Reinstatement to his position as superintendent has been waived by the plaintiff.

With relation to the relief sought by plaintiff for attorney fees, this court holds that said request is well taken and the court will consider the same as proper costs of these proceedings based upon a hearing to be held in which appropriate evilence is to be submitted for reasonable fees by plaintiff's counsel. There is ample authority in the decisions of our courts with relation to matters of this nature where the court has upheld the right of the plaintiff based upon sound public policy to be entitled to such fees.

Since this court has found that there was definite bias and prejudice and the charges were specious and not in compliance with the provisions of the statute, and therefore a violation of his constitutional rights as to due process, it finds that, on the basis of public policy and its equity powers, the court has a duty to right a wrong committed by a public agency and not to discourage meritorious claims because of economic oppression and probable economic disaster. The request for attorney fees is appropriate equity remedy in our judicial structure. To permit a public agency to pursue a wrongful act and pay for those actions and proceedings with public funds and deny the prevailing party the right to recover for its just and meritorious action would be unconscionable. To pursue this position otherwise would stifle the effort of those who are wronged to pursue appropriate remedies in our courts.

Equal justice demands a corresponding obligation to pay for the prosecution of restoration. *Channel* v. *NCR Employees Independent Union*, 267 N. E. 2d 432.

As stated by the Court of Appeals, in 28 Ohio App. 2d 260, 277 N. E. 2d 85, in reviewing the aforementioned case, attorney fees reasonably expended may be allowed in a proper case as compensatory damages that are not in the nature of punitive damages.

Our courts in this state have also upheld an allowance of attorney fees in favor of one who successfully defends an action brought maliciously and without proper cause. *Pope* v. *Pollock*, 46 Ohio St. 367.

The Supreme Court of Ohio in the case of *Billington* v. *Cotner*, 37 Ohio St. 2d 17, recognized the view that the

outcome of a case need not be pecuniary to the public in order to justify the exercise of discretion to allow attorney fees in a taxpayers suit.

The principle, with relation to the allowance of reasonable attorney fees, is well stated in the case of *Stolberg* v. *Members of the Board of Trustees* (C. A. 2), 474 F. 2d 485 at 489:

"With respect to the issue whether to award attorneys fees, the emphasis is not placed solely on whether the defendants should suffer pecuniary punishment or be additionally deterred. Rather the objective is to assure that the plaintiff and others who might similarly be forced to great expense to vindicate clear constitutional claims, are not deterred from securing such vindication by the prospect of costly, protracted proceedings which have become necessary only because of the obdurate conduct of the defendants. It is especially important to assure that a healthy climate of free expression is not inhibited 'in the community of American schools' * * *.

"The circumstances of this case persuade us that an award of counsel fees is necessary to protect against the possibility that other faculty members might be reluctant to engage in activities protected by the First Amendment or might forego the vindication of their rights to do so in a court of law. Such a result would be destructive of the educational process in a free society."

*Judgment for plaintiff.*