**Thomas C. KNARR and the Griffith Federation of Teachers, Local 761 (AFL-CIO) an unincorporated voluntary association of teachers, Plaintiffs-Appellants,**

v.

**The BOARD OF SCHOOL TRUSTEES OF GRIFFITH, INDIANA, et al., Defendants-Appellees.**

**No. 18829.**

United States Court of Appeals, Seventh Circuit.

Oct. 4, 1971.

Rehearing Denied Jan. 19, 1972.

Saul I. Ruman, Hammond, Ind., for plaintiffs-appellants.

William J. Muha, Highland, Ind., Joel C. Levy, Hammond, Ind., for defendants-appellees.

Before DUFFY, Senior Circuit Judge, STEVENS and SPRECHER, Circuit Judges.

DUFFY, Senior Circuit Judge.

Plaintiff Knarr, a former teacher in the Griffith, Indiana, High School, brought this suit under Title 42 U.S.C. § 1983 and Title 28 U.S.C. §§ 2201 and 2202. He contends that his teaching contract was not renewed because of his activities in and on behalf of the Griffith Federation of Teachers, an AFL-CIO affiliated union.

The District Court held that it lacked subject matter jurisdiction of the complaint of the Griffith Federation of Teachers, Local 761 (AFL-CIO) and the complaint was dismissed as to the Union. We agree. Any reference hereinafter to plaintiff will refer to Mr. Knarr.

Detailed Findings of Fact and Conclusions of Law were filed by the trial court, 317 F.Supp. 832, which found and concluded that plaintiff failed to sustain the burden of proof on his claim that the refusal of defendants to offer him a contract to teach in the Griffith School System for the 1970–71 school year, violated his rights under the First and Fourteenth Amendments to the Constitution of the United States. The record shows that plaintiff was given statutory notice of the non-renewal of his contract

and that he received, in writing, the reasons for the non-renewal of his contract.

The District Court specifically found there was no breach by defendants of Knarr's contractual rights.

■ We recognize, as did the District Court, that the decision of a school board not to renew a teacher's contract is impermissible if it deprives a teacher of his constitutionally protected rights. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. However, that was not the situation in the case at bar.

Plaintiff became a member of the Griffith Federation of Teachers (herein called the Union) during his first year in the Griffith School System. During the 1968–69 school year, he was a Vice President of the Union, and in 1969 was an unsuccessful candidate for President of the Union. The trial court found that some of the defendants knew he was an active union member.

Although plaintiff argued to the contrary, the District Court found that membership and active participation in union affairs was, in no way, a barrier to employment or promotion in the Griffith School System, pointing out that one union member was made a principal of a junior high school in Griffith, that others were made heads of their departments in the High School, and three members of the Union's Negotiating Team for the same year as plaintiff, were given teaching contracts for the coming school year placing them on a tenure basis.

The District Court noted that Gerald Spejewski, probably the Union's most active member, was placed on tenure the previous year although he was the chief negotiator for the Union and served for one year as the Union's President.

We fully agree with the trial court that it is incongruous that a school board supposedly having a bias against a Union, would exercise that bias by preventing one union member from obtaining tenure while elevating several other union members to permanent status and by promoting still other union members.

Evidence was received that Knarr often failed to arrive at school at the appointed hour in the morning, and that he left his classes early. As the trial court stated, "According to the testimony of students, teachers and school administrators, Knarr's lack of concern for punctuality was as great during the 1969–70 school year as it ever had been."

The trial court referred to instances of insubordination by the plaintiff. It also noted on one occasion that plaintiff stated to Principal McKay that he did not want to become a school administrator to work on problems because "administrators are bastards." Plaintiff often displayed an ugly disposition in talking with his fellow teachers.

Plaintiff acknowledged several improper classroom statements which he had made, and he acknowledged that he told his students he would deny them under oath in the event they ever were reported.

One of plaintiff's former students kept a diary which included some of his abusive and inappropriate comments made by the plaintiff to his class. Among other things, he urged man should be a polygamist animal. He also encouraged students to violate school rules. Various witnesses noted that plaintiff frequently got to class ten minutes late and left ten minutes early. During a teachers' party at a public restaurant, there was testimony that plaintiff was under the influence of alcohol and acted in an obnoxious manner much to the embarrassment of some of the teachers present. Another student testified as to plaintiff's profanity in the classroom, and his criticism of women in teachers' unions, particularly that student's mother. She also heard appellant state to the class that "marriage is obsolete."

The evidence received by the District Court disclosed numerous instances where plaintiff Knarr was criticized and/or warned for failure to follow

proper school policy and procedure, for improperly conducting his classes and for inability to get along with members of the administration as well as with his colleagues in the teaching profession.

We are convinced the decision of the defendants in refusing tenure status to the plaintiff was based on a nonprejudicial appraisal of his performance as an educator. No evidence or finding supports plaintiff's contention of anti-union bias by the defendants.

The judgment of the District Court is Affirmed.