**Yvonne A. ADAMS et al.,**
**Plaintiffs-Appellants,**

**v.**

**CAMPBELL COUNTY SCHOOL DISTRICT, CAMPBELL COUNTY, WYOMING, et al., Defendants-Appellees.**

**No. 74–1478.**

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 23, 1975.

Decided Feb. 28, 1975.

Jerry D. Anker, of Lichtman, Abeles, Anker & Nagle, P. C., Washington, D. C. (Lawrence J. Sherman, of Lichtman, Abeles, Anker & Nagle, P. C., Washington, D. C., and Ronald W. Hofer, of Leimbeck, Aspinwall & Hofer, Casper, Wyo., on the brief), for plaintiffs-appellants.

R. R. Bostwick of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, Wyo. (Wade Brorby, of Morgan & Brorby, Gillette, Wyo., on the brief), for defendants-appellees.

Before BREITENSTEIN, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a civil rights action which arises under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. It results from the non-renewal by the Campbell County, Wyoming School Board of the contracts of appellants as teachers in the high school at Gillette, Wyoming. The Complaint alleges that there existed a connection between the non-renewal of appellants' employment and activities of plaintiffs which were constitutionally protected. Appellees denied this. They asserted that there were other reasons. The district court, after an extensive and full trial, made specific findings that the activities which the plaintiffs had relied on were not the causes of the School Board's action in not renewing the contracts. In addition, the court made positive findings as to the causes and determined that these pertained to the manner of carrying out course work. The trial court's findings are supported by the evidence, are not clearly erroneous and hence we affirm.

The activities which are in issue in this case took place during the academic year 1969–70.

The three appellants were first year contract, non-tenured teachers. Only appellant Brooks who had taught for one year at Northeastern Shelby County Consolidated School District in Indiana had had previous teaching experience. Appellant Adams had in the spring of 1969 graduated from the University of Wyoming. Appellant Wiseman had graduated the previous spring from Colorado State College at Greeley, Colorado.

## I.

## EVIDENCE AS TO THE CAUSES FOR NOT RENEWING THE CONTRACTS

The decisions not to renew the contracts took place after the principal of Gillette High School, Mr. MacDonald, recommended that the appellants not be rehired for the school year 1970–71. It was the School Board's final decision as to whether they should be rehired and that body approved the recommendation of Mr. MacDonald.

*Reasons given by MacDonald for not rehiring:*

The evidence of actions of plaintiffs which allegedly were constitutionally protected was presented by the plaintiffs. At trial they called the principal, Mr. MacDonald, as an adverse witness and questioned him as to the reasons for his recommendation of non-renewal. His testimony as to plaintiff Adams was that he could obtain better teachers; that her seating arrangements in class were too informal and that there was a lack of discipline in the classroom; that she engaged on one occasion in a loud argument with another teacher in an area where students could overhear what was being said; that she, together with Mr. Wiseman and a Miss Armel who, although terminated did not join the action, tended to have a clique and to cause disharmony among the remaining members of the faculty. He also said that she discussed current events in class and did not devote full attention to English, the course she was assigned to teach.

As to Wiseman, according to MacDonald, he played records including "Alice's Restaurant" and "Hair" in class and in doing so disturbed other classes. He did not cover the material; he also was part of the exclusive clique; and the students complained that they were not learning anything.

As to Brooks, Mr. MacDonald said that he was often late to work on Mondays; that he had trouble getting along with the staff; that on one occasion he had an altercation with one of the coaches; and that in another instance he was guilty of insubordination toward MacDonald in that he refused to allow his students to go to a general assembly until after an embarrassing confrontation with MacDonald.

There is no controversy as to the existence of differences between MacDonald, Wiseman and Adams as to teaching methods and course content, nor is there any dispute concerning the general assembly incident between Brooks and MacDonald. Appellants' positions are that their many and varied activities, all of which were forms of expression (First Amendment), were the actual reasons and that appellees' assigned reasons were in effect pretexts.

*Appellants' versions as to the terminations:*

An underground newspaper was published by some of the students, and Adams and Wiseman say that they were blamed for having published it. MacDonald testified, however, that he accepted Adams' and Wiseman's statements that they had nothing to do with this paper and that this was not a causal factor.

Adams and Wiseman had a book club for students which was conducted once every two weeks from 7:00 to 9:00 p. m. at one of their homes. They testified that MacDonald questioned them about the club and expressed his opinion that it was unnecessary to have it in the evening and away from the school. MacDonald agreed that he had asked about it and that he could not understand why the club was conducted outside the school. The appellants, however, said that MacDonald asked them if they were pushing Communist propaganda, dabbling in drugs and serving alcohol. They also said that MacDonald mentioned the book club as a reason for their non-renewal. It is to be noted, however, that the book club continued throughout the academic year 1969–70.

Brooks wore an arm band for a short time in the fall as a symbol of mourning for the soldiers killed in Viet Nam. It does not appear that any big issue existed on this account. MacDonald did speak to Brooks about it, and it seems doubtful, since it was not a continuing incident, that it could have played any part in the failure to renew.

MacDonald admitted that he did not favor Adams and Wiseman discussing issues such as the war and flag burning in their English classes. Both Adams and Wiseman admitted that they spent a portion of their class time discussing political matters. Wiseman said that he had discussions on the war, long hair, hippies and drugs.

There was a dispute as to how frequently the mentioned records were played. Wiseman, according to MacDonald, played them so frequently that it disturbed other teachers. Wiseman denied this.

The incident between Brooks and MacDonald regarding the assembly occurred around noon on February 18, 1970. Brooks had full notice that an assembly was to be held. He had scheduled tests for the whole day and he tried to get in touch with MacDonald to persuade him that the pep rally should be held at another time. He said that when he was unable to reach MacDonald he merely decided to keep the class in the room. When the class did not show up at the assembly MacDonald came to the room and ordered Brooks to send the children to the pep rally (or assembly) and Brooks, in the presence of the children, refused to do so. The resulting confrontation in the presence of the students proved embarrassing to MacDonald and led to a complaint being made to the superintendent plus a meeting between Brooks, MacDonald and the assistant superintendent.

It was on March 10 that the Board held its personnel meeting and gave its approval for the termination or non-re-

newal of the employment of Brooks, Adams and Wiseman.

## II.

### THE TRIAL COURT'S FINDINGS

The trial court found in favor of the defendants. From the evidence, the court determined that the non-renewal of appellant Adams was not occasioned by the publication of the underground newspaper; by alleged membership in Students for a Democratic Society; by Adams' possible threat to authority; or by suspicions that she was communistically inspired and a radical agitator, that she engaged in subversive tactics, that she was too liberal and too advanced, and that she might jeopardize a bond issue in the school district. The court's findings as to cause were: she failed to maintain ordinary seating arrangements for the students; she failed to maintain the student discipline as requested by her principal; she failed to devote sufficient time to grammar as requested by the principal. The court said that the allegations of the complaint that her contract was not renewed because of conduct which was protected by the Constitution of the United States were not established by a preponderance of the evidence.

As to Wiseman, the court found that the non-renewal was because of poor teaching practices and because there were better English teachers available. The court went on to find that non-renewal was not, as he alleged, a result of his hair being too long; telling students in class that long hair was okay; the playing of the two records mentioned above; saying that the flag was merely a symbol and not the country; publication of an underground newspaper; the discussions regarding rights of free speech in the class and in the community; his being a subversive threat to the bond issue; or his refusal to teach that the war in Viet Nam was a good war. As to Wiseman, the court also found that the non-renewal was not on account of conduct protected by the Constitution of the United States.

Similarly, as to Brooks, the court found that none of the grounds which he had alleged as reasons for his dismissal or non-renewal had been proven to be such by a preponderance of the evidence, including the fact that his hair was too long; that he was sympathetic with young revolutionaries; that he was a subversive threat; that he participated in a peace march; that he was too liberal and a threat to the bond issue; that he was discriminated against regarding press releases. The court found instead that he had not been renewed because of insubordination.

## III.

### THE ISSUE ON APPEAL

This case differs from Rampey v. Allen, 501 F.2d 1090 (10th Cir. 1974), cert. denied, —— U.S. ——, 95 S.Ct. 827, 42 L.Ed.2d 838 (1975), Smith v. Losee, 485 F.2d 334 (10th Cir. 1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974) and also the Supreme Court decisions in Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) in that we do not reach the issue considered in those cases, namely, whether the conduct in question which resulted in termination constituted a violation of the teachers' First Amendment rights. The trial court's ruling that these alleged First Amendment incidents did not enter into the decisions reduces this appeal to a review of the findings and conclusions on this subject.

■ The fact that the Board adopted the recommendations of the superintendent and of Mr. MacDonald, the principal, rather than making its own findings does not undermine the validity of the proceedings. It does require, however, that MacDonald's reasons be considered as well as the Board's. See Rampey v. Allen, supra. In Rampey, as in the case at bar, the Board itself did not give any reasons for non-renewal. In Smith v. Losee, supra, the procedure was the same. In Cook County College Teachers

Union Local 1600 v. Byrd, 456 F.2d 882 (7th Cir.), cert. denied, 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), it was said that the reasons given by the department chairman, the dean of faculty, the president and executive vice-president were the important reasons even though the Board of Governors had to make the final decision. Contrary to plaintiffs' assertions, the trial court did consider MacDonald's reasons in making its findings.

The key to decision in this case is what the actual reasons were, whether the trial court made findings with reference to those reasons and whether the court's findings are fully supported. In this case the reasons were adequately shown and were adopted by the court in accordance with the evidence.

█ We are aware that even non-tenured teachers cannot be dismissed for exercising constitutional rights. This principle is well recognized. *See* Perry v. Sindermann, *supra*; Pickering v. Board of Education, *supra*; Rampey v. Allen, *supra*; James v. Board of Education, 461 F.2d 566 (2d Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972); Parducci v. Rutland, 316 F.Supp. 352 (M.D.Ala.1970). But that is not the problem here.

### IV.

### INSUFFICIENCY OF THE EVIDENCE TO ESTABLISH CONSTITUTIONAL VIOLATIONS AS THE CAUSE OF NON–RENEWAL

█ Since the plaintiffs-appellants' position is that it was their exercise of First Amendment rights which resulted in their separation, they have the burden of proof as to this. Smith v. Losee, *supra*; Fluker v. Alabama State Bd. of Educ., 441 F.2d 201 (5th Cir. 1971). Since there was substantial evidence to support the trial court's findings that plaintiffs had failed to meet their burden, a reversal would require a determination that the findings were clearly erroneous, that "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). No such showing has been made.

We do not say that there is a complete dearth of evidence in support of plaintiffs' claims. But evidence on behalf of the appellees was substantial in support of their view that the cause for non-renewal was deficiencies in teaching rather than the conduct suggested by appellants, and it cannot be denied that there were a large number of teachers available at the time, whereby MacDonald might well have been able to hire better teachers.

There is one item that warrants special mention and that is MacDonald's statement that one reason for his recommendations for Adams and Wiseman was that they and one other teacher had a clique which created disharmony and undermined morale among the other members of the faculty. This is quite different from the problem in *Rampey, supra,* in which the president's complaint was that the faculty members associated with one another and the students.[1]

As to Brooks, his insubordination fully justified his non-renewal. As to termination because of political views, there is a conflict on this, with Brooks saying that he was terminated on this account and MacDonald saying that he was not. The manifest weight of the evidence

---

1. MacDonald, like President Carter in *Rampey,* found their association with one another divisive. In *Rampey,* however, the court found that by "divisive" President Carter meant they disagreed with him. Here MacDonald testified that the plaintiffs' cliquishness alienated them from the rest of the faculty and that faculty morale was, at the time, very important. There is no evidence that MacDonald considered the clique bad merely because they had different viewpoints on some issues. Finally, in *Rampey* the court noted that the relationship between Carter and the professors was not one which required personal loyalty. Here, unlike *Rampey,* and Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), a question of "harmony among co-workers" and "personal loyalty and confidence" is involved.

does not support Brooks on this issue either.

■ Plaintiffs also argue that teachers have a First Amendment right to discuss controversial subjects and use controversial materials in the classroom.[2]. Undoubtedly they have some freedom in the techniques to be employed, but this does not say that they have an unlimited liberty as to structure and content of the courses, at least at the secondary level. Thus in a small community like Gillette the Board members and the principal surely have a right to emphasize a more orthodox approach, for example, and it would seem that they may insist that record playing and current events do interfere with this program. We have found no law which allows a high school teacher to have the broad latitude which appellants seek.

In Pickering v. Board of Education, *supra,* the Supreme Court held the firing of a teacher to be impermissible where it was based on a letter of criticism (to the editor) sent to a local paper. At the same time, the Court recognized that teachers' First Amendment rights are not absolute when it said:

At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection

with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

391 U.S. at 568, 88 S.Ct. at 1734.

■ In the case at bar the teaching methods of Adams and Wiseman may have had educational value as the expert testified, but this is not equivalent to saying that they had a constitutional right absolute in character to employ their methods in preference to more standard or orthodox ones.

Ahern v. Board of Education, 456 F.2d 399 (8th Cir. 1972) involved a high school teacher who allowed students to participate in subject matter and behavior decisions. While the teacher was absent a substitute slapped a student. This caused the plaintiff to be upset and to spend class time formulating a regulation on corporal punishment. She refused to stop even though the principal requested her to do so. The Eighth Circuit rejected her contention that her subsequent discharge constituted an abridgment of her constitutional freedom. The court ruled instead that she did not have

**2.** Keefe v. Geanakos, 418 F.2d 359 (1st Cir. 1969) (A tenured teacher, who was also head of the English department, was suspended and about to be fired for assigning an article from Atlantic Monthly to his senior English class. The article used and discussed an extremely offensive "dirty" word, which the teacher discussed in class, explaining its origin, context, and the reason the author used it. The court held the teacher was entitled to a preliminary injunction against his discharge hearing because he was likely to prevail on his claim (1) that he was entitled as a matter of academic freedom to use the article and discuss the word and (2) he had inadequate warning that his action would be considered improper.) Mailloux v. Kiley, 323 F.Supp. 1387 (D.Mass.), aff'd, 448 F.2d 1242 (1st Cir. 1971) (A teacher in a junior English class wrote the word "fuck" on the board and asked for a definition as part of a discussion about taboo words. The next day the teacher

was suspended and within the month he was discharged. The court held that while the teacher's technique could be supported, it was not plainly permissible. Thus a school could discharge a teacher under these circumstances, but only where the teacher had notice that the method should not have been used.) Parducci v. Rutland, 316 F.Supp. 352 (M.D.Ala.1970) (The teacher assigned a Kurt Vonnegut story to her junior English class. The next day she was called in to explain herself and was told she might be dismissed. About two weeks later, after a hearing, she was dismissed. The court held that while the right of academic freedom was not absolute, the teacher had been fired in violation of her First Amendment rights. The court emphasized that the teacher had no way of knowing that assigning the story was prohibited conduct.) Note that in each of these cases the plaintiff was fired during the school term, not merely non-renewed.

a constitutional right to persist in a course of teaching, conduct or behavior which was contrary to the dictates of her employers. *See also* Drown v. Portsmouth School District, 451 F.2d 1106 (1st Cir. 1971), upholding a non-renewal because of a teacher's being too innovative and unconventional, and Fluker v. Alabama State Board of Education, 441 F.2d 201 (5th Cir. 1971), allowing the college to terminate two teachers in favor of successors who had better qualifications.

Plaintiffs finally argue that their evaluations as teachers were good and that this entitled them to be rehired. We are not in a position to second guess the appellee school authorities on this subject. *See* Cook County College Teachers Union Local 1600 v. Byrd, *supra.* *See also* Clark v. Holmes, 474 F.2d 928 (7th Cir. 1972), cert. denied, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973) (no constitutional right to override judgment of superiors as to proper content of particular course); Simard v. Board of Education, 473 F.2d 988 (2d Cir. 1973) (school can justifiably demand more than competent classroom instruction); Knarr v. Board of School Trustees, 317 F.Supp. 832 (N.D.Ind.1970), aff'd, 452 F.2d 649 (7th Cir. 1971) (school can terminate teacher who is chronically late, advises students to disobey the dress code, is rude to other teachers and uses classroom as a personal forum.)

In sum, we must hold that the trial court's findings as to the reasons for termination were supported by the evidence. We are bound also to affirm the trial court's finding and conclusion that the plaintiffs failed to prove that they were fired because of conduct which was protected by the Constitution.

It follows that the judgment of dismissal was proper and that it should be and is hereby affirmed.