

# The Attorney General of Texas

December 28, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Lyndon Olson, Jr.
Chairman, Higher Education Committee
House of Representatives
State Capitol
Austin, Texas 78711

Opinion No. H- 1314

Re: Validity of State Board of Education rules for the accreditation of school districts.

Dear Representative Olson:

You request our opinion concerning the validity of the rules adopted in 1977 by the State Board of Education to govern the process of accrediting school districts in the state.

The Legislature has specified that a Texas school district must be accredited by the Central Education Agency in order to receive financial support from the Foundation School Fund. Educ. Code §§ 16.051, 16.053. The State Board of Education has the duty to establish rules and regulations for the accreditation of schools. Educ. Code, §§ 11.01, 11.26.

You first ask if the 1977 rules, designated in the Texas Register as Rule 226.37.15 and denominated "Principles, Standards and Procedures for Accreditation of School Districts — 1977," conflict with section 13.032(c) of the Education Code.

Section 13.032(c) specifies that in developing standards for programs in teacher education, the State Board of Education may not require an institution to teach a particular doctrine or to conduct instruction in accordance with any pedagogical method. In our opinion, the provision concerns only the authority of the board with respect to colleges and universities offering programs of teacher education and does not relate to the authority of the board respecting accreditation of school districts for participation in the Foundation School Fund. See Attorney General Opinion H-197 (1974).

You also ask if the 1977 rules are in conflict with section 23.26(b) of the Education Code, which reads:

> The trustees [of an independent school district] shall
> have the exclusive power to manage and govern the free
> schools of the district.

(Emphasis added).  The corollary of this provision is section 11.63(a)(3), which states with respect to the State Department of Education:

> [It] shall . . . seek to assist local school districts in developing effective and improved programs of education through research and experimentation, consultation, conferences, and evaluation, but shall have no power over local school districts except those specifically granted by statute.

(Emphasis added).

The 1977 accreditation rules set out specific standards to which school districts must conform to be accredited by the Central Education Agency for participation in the Foundation School Fund.

We do not believe section 23.26(b) can be read in isolation from other provisions of the law.  Referring to its similarly worded predecessor, the Amarillo Court of Appeals said in Anderson v. Canyon Ind. Sch. Dist., 412 S.W.2d 387 (Tex. Civ.  App. — Amarillo 1967, no writ), "The provisions of this statute must be considered in the light of other statutes to determine the authority of the trustees to enact a particular rule or regulation."  No school district is statutorily compelled to seek accreditation, although a failure to gain accreditation forfeits financial support from the Foundation School Fund. See University Interscholastic League v. Midwestern University, 255 S.W.2d 177 (Tex. 1953); Palmer Publishing Co., v. Smith, 109 S.W.2d 158 (Tex.  1937); Attorney General Opinion V-388 (1947).  See also Cook v. Jackson, 109 S.W.2d 160 (Tex. 1937), reversing 82 S.W.2d 154.

Additionally Senate Concurrent Resolution No. 30 of the regular session of the 65th Legislature commanded the State Board of Education to revise its accreditation standards to require of school districts that student proficiency in basic skills be assessed and, if necessary, remedied.  The 1977 rules adopted by the board were designed to accomplish that task.  This resolution reflects the policy of the state in one of the modes prescribed by the Texas Constitution. Terrell v. King, 14 S.W.2d 786 (Tex. 1929).

Accordingly it is our view that the courts of this state would conclude that the 1977 accreditation rules do not usurp the authority of local school boards or conflict with section 11.63 of the Education Code.

Your third inquiry asks if the 1977 rules are void for vagueness.  Administrative regulations are tested by the same principles of construction as statutes, and are unconstitutionally vague only when a required course of conduct is stated in terms so vague that persons of ordinary intelligence cannot be sure of what is required; that is, when there is a substantial risk of miscalculation by those whose acts are subject to regulation. Lloyd A. Fry Roofing Co. v. State, 541 S.W.2d 639 (Tex. Civ. App. — Dallas 1976, writ ref'd n.r.e.).

The 1977 accreditation rules, as subsequently amended, consist of (1) a statement regarding the statutory basis for accreditation, (2) a general position statement, (3) conditions and procedures for accreditation, (4) principles and standards, and (5) an appendix of additional accreditation regulations, including a description of the accreditation planning process. All except the fourth category above, that is, "principles and standards," are presented in relatively straightforward and easy-to-understand language.

We cannot say that material in the "principles and standards" section of the 1977 accreditation rules is so vague as to be invalid as a matter of law, although jargon used in the educational field is often employed. Regulations are presumed valid and the burden of showing otherwise is on the party asserting invalidity. When a term used has a peculiar or technical meaning as applied to some art, science, or trade, courts look to the particular art, science or trade from which it is taken in order to ascertain its meaning, and the testimony of expert witnesses may be used to clarify such terms. Lloyd A. Fry Roofing Co. v. State, supra.

We cannot assume that the language of the 1977 accreditation rules, when read in its entirety, presents a substantial risk of miscalculation by those educators whose acts are subject to regulation.

In your last question you ask if the 1977 rules impose a required teaching ideology upon teachers in violation of their First Amendment rights.

Senate Concurrent Resolution No. 30 of the 65th Legislature, a policy directive in which both legislative houses joined, and which the governor approved, provides:

> WHEREAS, The State Board of Education has adopted the following as a state goal for public education: 'In terms of their individual ability to achieve, each student should have a knowledge of the traditionally accepted fundamentals, such as reading, writing, and arithmetic in the early grades, accompanied by studies in higher mathematics, science, history, English, and other languages as they progress through the upper grades;' and

> WHEREAS, There is mounting public concern that the public schools are graduating an increasing number of students who have not achieved this goal and who simply cannot read, write, or do basic arithmetic at a level high enough to be functionally competent in today's society; and

> WHEREAS, It is a personal tragedy for a student to spend 12 years in the public school system and to be unable to compete in employment and other opportunities after graduation because of poor preparation; and

> WHEREAS, Public confidence in and fiscal support for a public school system that fails to achieve its basic goals are difficult to maintain; now, therefore, be it

RESOLVED by the Senate of the State of Texas, the House of Representatives concurring, That the State Board of Education be and hereby is directed to revise its accreditation standards to require school districts to evaluate their educational programs in terms of the goals of public education; and, be it further

RESOLVED, That the State Board of Education revise its accreditation standards to require each school district to assess the proficiency of its students in basic skills at designated grade levels and to formulate plans for remedial programs if necessary. S.C.R. 30, 1977 Tex. Gen. Laws, at 3192, 3193.

The briefs submitted to us on this question view it as one involving the academic freedom of teachers to choose the content of particular courses or subjects taught in the schools, or to choose the method of teaching a particular course or subject. It is contended by some of the briefs that the concept of "accountability" is inimicable to the First Amendment rights of the academic community.

We do not believe the 1977 accreditation rules are facially unconstitutional. See East Hartford Education Ass'n v. Board of Education, 562 F.2d 838, 857, n.5 (2nd Cir. 1977) (en banc).

In our opinion the 1977 accreditation rules do not impose a required teaching ideology upon teachers in violation of their First Amendment rights. See Adams v. Campbell County School Dist., 511 F.2d 1242 (10th Cir. 1975); Presidents Council, Dist. 25 v. Community School Board No. 25, 457 F.2d 289 (2nd Cir. 1972); Ahern v. Board of Education, 456 F.2d 399 (8th Cir. 1972); Mailloux v. Kiley, 323 F. Supp. 1387 (D. Mass.), aff'd, 448 F.2d 1242 (1st Cir. 1971); Goldstein, The Asserted Constitutional Right of Public School Teachers to Determine What They Teach, 124 University of Pennsylvania Law Rev. 1293 (1976).

## SUMMARY

The 1977 principles, standards, and procedures for the accreditation of school districts adopted by the State Board of Education do not conflict with particular provisions of the Texas Education Code, are not unconstitutionally vague, and do not facially violate First Amendment rights of teachers.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn