**BOARD OF TRUSTEES, LARAMIE COUNTY SCHOOL DISTRICT NO. I,**
Appellant (Respondent below),

v.

**In the Matter of Sydney SPIEGEL,**
Appellee (Petitioner below).

**No. 4494.**

Supreme Court of Wyoming.

April 22, 1976.

John J. Rooney, of Rooney & Horiskey, Cheyenne, for appellant.

Philip P. Whynott, of DeHerrera & Whynott, Cheyenne, for appellee.

Before GUTHRIE, C. J., Mc-CLINTOCK, THOMAS and ROSE, JJ., and REUEL J. ARMSTRONG, D. J., retired.

ROSE, Justice.

The board of trustees of the school district versus Sydney Spiegel, the teacher, is a contest about *liberty*. There is involved in this appeal the question of

*Liberty*, as conceived by the free-speech provisions of the First Amendment to the Federal Constitution, and

*Liberty*, as it is contemplated by the fair-hearing provisions of the Fourteenth Amendment of the Federal Constitution.

Learned Hand spoke about the spirit of liberty when he addressed a group of newly-naturalized citizens at ceremonies in New York's Central Park in 1944. He said:

"The spirit of liberty is the spirit which is not too sure that it is right; the spirit of liberty is the spirit which seeks to understand the minds of other men and women; the spirit of liberty is the spirit which weighs their interests alongside its own without bias; the spirit of liberty remembers that not even a sparrow falls to earth unheeded; the spirit of liberty is the spirit of Him who, nearly two thousand years ago, taught mankind that lesson it has never learned, but has never quite forgotten; that there may be a kingdom where the least shall be heard and considered side by side with the greatest."

## BACKGROUND

This appeal comes to us from an order of the District Court which reversed the order of the Board of Trustees of Laramie County School District No. 1 terminating the contract of employment of Sydney Spiegel, a continuing contract teacher, after a hearing had been afforded him pursu-ant to § 21.1–158 W.S.1957, 1975 Cum. Supp.

The issue before the Board was whether or not there was cause to approve the recommendation for termination of Spiegel's employment contract.

Procedurally, Mr. Spiegel was given notice of recommendation of termination on March 12, 1973. He requested a hearing as required by § 21.1–158, W.S.1957, 1975 Cum.Supp., on March 22, 1973. A notice of hearing was given on March 22, 1973, with the hearing scheduled for April 6, 1973, within the 30-day period required by § 21.1–158, supra. Appellee-Spiegel then, on March 29, 1973, filed Motions for Change of Hearing Room, More Definite Statement, In Limine, and To Dismiss. On April 4, 1973, he filed a Motion to Set Matters for Hearing Prior to Hearing, Motion for Extension of Time (for hearing), Motion to Correct Personnel File, and Motion to Strike. Except insofar as the motions were heard on April 5, 1973, pursuant to the Motion to Set Matters for Hearing prior to the Hearing, the motions were all denied on April 6, 1973, prior to the commencement of the Board's hearing on the issues. The hearing itself was commenced on April 6, 1973, and, after an intermission of some days, was continued. Arguments of counsel were heard on May 30, 1973. The Board decided that Spiegel's contract should not be renewed.

Spiegel had requested permission to voir dire the Board in an effort to ascertain its bias—or lack of it—its partiality or impartiality. In refusing the request, the Board said that it intended to act only on the evidence presented, that it was aware of its qualifications, and that it was familiar with the provisions of the Wyoming Administrative Procedure Act and the School Code under which it was proceeding.

## FACTS

We will relate some of the essential facts upon which this appeal is predicated and others will be referred to as the occasion demands.

On the 15th day of March, 1973, the appellant-Board of Trustees forwarded a notice of termination to Sydney Spiegel, a continuing contract teacher who had been employed in the Cheyenne school system for some nineteen years. It read:

"NOTICE OF RECOMMENDATION OF TERMINATION

"To Sydney Spiegel:

"Notice is hereby given to you that on March 12, 1973, the Board of Trustees of School District Number One unanimously passed the following resolution which is self-explanatory, to-wit:

"RESOLVED: That this Board hereby recognizes the recommendation by Mr. Willits Brewster, a Board member, of the termination of the teaching contract of Mr. Sydney Spiegel, effective at the end of the school year 1972–73; and that Mr. Spiegel be given notice immediately in writing of this recommendation and of the fact that the recommendation was made for the reasons that a number of students, on their own or because of parental concern, had withdrawn from, or refused to enroll in classes taught by him. Further for the reason that his philosophy on teaching methods and procedures has been in conflict with that of the administration and of the Board of Trustees and that this gap in philosophy has not narrowed as anticipated with the passage of years; and further that he does not have the ability to work harmoniously and cooperatively with the administration and Board of Trustees. The notice shall also inform him further the reasons given for the withdrawal or refusal to enter his classes were an adverse effect which he had on the emotional stability, discipline, cooperative attitude, civic reasponsibility, loyalty, maturity of judgment, personality and character of the students in his classes.

"s/ Joe E. Lutjeharms
"Superintendent of Schools"

The findings of fact made up by the Board after the hearing cast light on the problems existing between Spiegel and the Board. Paraphrased, the findings show that in 1972–1973 a race-relations problem existed at Central High School in Cheyenne. The Board caused an investigation to be made of the matter and the investigator submitted a report which Mr. Spiegel failed to read. An assembly to honor Martin Luther King was authorized by school officials at Central and the school charges that two boys were told not to distribute leaflets concerning the assembly but they did it anyway. The school says that Mr. Spiegel knew of the boys' plan but did not report this to the officials, all in violation of his duty to the school. One of the boys was expelled and another suspended and the Board found that their testimony was "willfully incorrect and untrue in significant detail." The Board found Spiegel's "attitude" deficient in that he did not help the administration before the incident and in that he attended a protest meeting afterwards.

The Board further found that Mr. Spiegel made and published certain statements criticizing the administrator of his school and schools generally. Documents introduced show that the statements were made and published in connection with Mr. Spiegel's union activities—not in connection with his school activities. There is no necessity to relate in detail these utterances, but suffice it to say, the tenor was sharply critical of administrators in education for the reason that the techniques employed by them in the administration of the schools had the effect of harming instead of aiding the educational processes.

The Board objected to Spiegel's attitude toward submission of lesson plans—taking class attendance rolls—the way he permitted his class to receive messages—placing a rope across his door so persons could not interrupt his teaching during the class hour —his failure to sign out when leaving the school building. It was charged that parents requested the students be withdrawn

from his class—the administration objected to his philosophical concepts—that he had not followed the methods, requirements and rules of the school and his attitude with respect thereto left a lot to be desired and were "in disregard of the rights and requirements of others"—that he disregarded the direction of the Board and the administration—his attitude was one of defiance and that his contract should therefore be terminated

"for any or all of the foregoing oppositions, rejections, objections, actions, attitudes or statements."

As we have seen, the District Court found against the Board and we hereafter discuss the issues which make up the appeal.

## VOIR DIRE[1]

". . . Voir dire of the board would have been a useless procedure . . ." (Appellant's brief)

The appellee requested and was refused the right to inquire of the members of the School Board as on voir dire. Translated, this term means "to speak the truth." The process involving voir dire is invoked when, among other things, the "interests" of those who are to be questioned are in issue.

While the "interests" of the Board are the subject of the appellee's proposed inquiry on voir dire, the right to make such inquiry must be shown.

The right to inquire, if one exists, comes from the right of the appellee to a fair hearing before the School Board.

### Right to a Fair Hearing

The Ohio Supreme Court said in *Sorin v. Board of Education,* 39 Ohio Misc. 108, 315 N.E.2d 848, 851 (March 1974):

"In accordance with the decisions of various jurisdictions and the Supreme Court of the United States, an unbiased tribunal is a constitutional necessity in a quasi-judicial hearing, and a denial of the same is a denial of due process. *Ward v. Village of Monroeville,* 409 U. S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267; *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749; *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942. The requirement of an impartial tribunal applies to administrative proceedings no less than criminal trials. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287."

Section 9–276.30, W.S.1957, 1975 Cum. Supp., provides that hearings under the Wyoming Administrative Procedure Act shall be conducted in an "impartial manner" and § 9–276.29 of the act recognizes the possibility of impropriety and seeks to safeguard against bias and prejudice.

We addressed the problem of the fair-hearing requirements of due process in administrative proceedings in *Fallon v. Wyoming State Board of Medical Examiners,* Wyo., 441 P.2d 322, 327, when Justice Gray, speaking for the Court, said:

"With respect to a fair hearing, it is fundamental that principles of justice and fair play require 'an orderly proceeding appropriate to the case or adapted to its nature, just to the parties affected, and adapted to the ends to be attained, one in which a person has an opportunity to be heard, and to defend, enforce, and protect his rights before a competent and impartial tribunal legally constituted to determine the right involved; representation by counsel; [and] procedure at the hearing consistent with the essentials of a fair trial according to established rules which do not violate fundamental rights.' 2 Am.Jur. 2d, Administrative Law, § 353, pp. 166–167."

Referring to *Board of Medical Examiners v. Steward,* 203 Md. 574, 102 A.2d 248, and *New Jersey State Board of Optometrists v. Nemitz,* 21 N.J.Super. 18, 90 A.2d 740, 745, 749, Justice McIntyre, concurring

---

1. The voir dire section of this opinion represents only the expressions of Justice Rose and Judge Armstrong and is not the majority opinon on the subject of voir dire.

with Justice Gray, observed in *Fallon,* supra:

"In the Steward and Nemitz cases cited . . . recognition was given to the fact that the due process clause of constitutions guaranteeing to every person a fair hearing before a fair and impartial court applies to administrative agencies exercising judicial or quasi-judicial functions . . ."

We were concerned with the same question when Mr. Justice Parker, writing for the Court in *Lake De Smet Reservoir Company v. Kaufmann,* 75 Wyo. 87, 96, 292 P.2d 482, 484, said:

". . . The necessity for disqualification is not relieved by the fact that there may be no actual interest of the official in conflict with the duties of his office, because the best administration of our laws requires not only that the officers be fair, impartial, and disinterested, but that they do not give an appearance to the contrary."

We have, therefore, formerly held, and I would here reaffirm, that embraced by the appellee's constitutional and statutory guarantee to a fair hearing in the administrative process, is his right to be heard before an unbiased, fair and impartial tribunal—one which is

"free from bias and prejudice and imbued with the desire to accord to the parties equal consideration . . ." *Inland Steel Co. v. National Labor Relations Board,* 7 Cir. 1940, 109 F.2d 9, 20.

Even though the appellant-Board of Trustees ruled that it would not stand for voir dire inquiry, the District Court held that Mr. Spiegel's counsel should have been permitted to voir dire the board members in an effort to ascertain if they were possessed of such prejudice or bias as would prevent their according his client a fair hearing.[2]

I would agree with the District Court.

*Inquiry Should be Allowed*

How can it be determined that the members of an administrative board are not prejudiced against an accused unless his or her attorney is permitted to inquire into the question?[3]

It is not doubted that the men and women who serve on school boards are people of good will and high purpose—that is taken for granted. They would not submit to the massive discomfort and contentious thanklessness of school board public service if that were not the case.[4] But that is not the question. The question is:

The Board had originated and adopted the complaint and resolution against the teacher—where criticism of and dissatisfaction with his teaching is charged, thereby bringing him before the membership to defend himself in humiliation and chagrin. Are the individuals who compose that Board, nonetheless, people of such unique mental and emotional attribute as to permit them to stand—as a class—so high above and beyond the pale and impact of human experience that they are not even subject to the implant of a prejudice which they

---

2. The District Court judge said:

"It is difficult to understand how one can determine the possible bias or prejudice of a board member unless one is permitted to question him about it."

3. For a case where voir dire was employed to determine if the members of an administrative tribunal could resolve the facts on a "fair and impartial basis," see *Duffield v. Charleston Area Medical Center, Inc.,* 4 Cir. 1974, 503 F.2d 512, 516.

4. We expressed the same thoughts with respect to a medical review tribunal in Fallon, supra, when we said:

"We also start, of course, with the presumption that members of the board 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 1004, 85 L.Ed. 1429. See also *National Labor Relations Board v. Donnelly Garment Co.,* 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854."

might not be able to discard or erase no matter how hard they tried?[5]

It was the thought of Anatole France that each of us has his own prejudice but the greatest prejudice is with him who says he has none.[6]

### Burden of Proving Impropriety

In a contested school administrative proceeding hearing, where it was urged that an open letter to the boundary board, written by the Superintendent of Public Instruction, was released to the newspaper in violation of the provisions of § 9–276.29, W.S.1957, 1967 Cum.Supp [now 1975 Cum.Supp.], we said, in *Elementary School Districts 2, 3, & 10 v. District Boundary Board*, Wyo., 454 P.2d 237, 241, that it was the plaintiff's burden to establish any impropriety on the part of any member of the administrative board.[7]

### The Practical Problem

The problem which presents itself to the contestant in an administrative hearing is this:

Keeping in mind that board members "are assumed to be capable of judging fairly" (*Fallon*, supra); and

Admitting that it is the contestant's burden to prove impropriety or bias (*Forest Oil Corporation v. Davis; Elementary School Districts v. District Boundary Board*, supra); and

Once it is agreed that the guarantees of due process mandate a fair hearing and that a "fair hearing" contemplates impartial—fair—unbiased—just and reasonable fact-finders (*Fallon*)—

How, then, does the contestant go about determining whether or not the fact-finders who are to hear the testimony, consider the evidence and make the ultimate decision in *his* case have all of these beautiful qualifications?

If the appellee here is guaranteed his constitutional rights of fair and impartial hearing and the burden of proving bias is his, but he is denied an access route along which he may travel in pursuit of these rights—then he has no rights. The constitutional guarantee of a fair hearing then becomes—for the appellee—

"a riddle wrapped in a mystery inside an enigma . . ."[8]

### Rule of Necessity

Adding to the dilemma of him who seeks a fair hearing before the administrative tribunal is the rule of necessity which is called up by appellant as standing for the proposition that the board or its membership may not be disqualified because this school board is the only tribunal with jurisdiction to hold the hearing. In such case, it is argued by appellant in its brief, the right of fair hearing must give way to the rule of necessity. The conclusion urged is

---

5. The District Court judge summarized his impression of the Board as follows:

 " . . . In Spiegel's case, the Board unanimously adopted and executed the statement of reasons for termination; the members acted as prosecutors, and as hearing officers; ruled on objections without hearing any reason for the objection, and in at least two cases sustained an objection which had not been made; argued with opposing counsel about his objections and offers; interrogated witnesses in an inquisitorial manner with questions tending to elicit inculpatory answers, cross-examined witnesses; and finally sat in judgment."

6. "He flattered himself on being a man
 Without any prejudice; and this
 Pretension itself is a very great
 Prejudice . . ."
 [The Crime of Sylvester Bonnard—Anatole France]

7. We said in *Elementary School Districts*, supra:
 "It was plaintiffs' burden, of course, affirmatively to establish that an impropriety was practiced by the board with respect to this matter. *Forest Oil Corporation v. Davis*, Wyo., 396 P.2d 832, 836 . . ."

8. Prime Minister Winston Churchill, speaking to his inability to forecast what Russia would do in World War II. World Broadcast, October 1, 1939.

that, these things being so, voir dire becomes a useless procedure.[9]

It was said in *Federal Home Loan Bank Board v. Long Beach Fed. S. & L. Ass'n,* 9 Cir., 295 F.2d 403, 408 (1961):

> ". . . The charge of bias and prejudice directed against the majority of the members of a government agency must give way to the necessity of permitting the agency to perform the function which it alone is empowered to perform." (Citing *F.T.C. v. Cement Institute,* 333 U.S. 683, 701, 68 S.Ct. 793, 92 L.Ed. 1010; *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429; *Marquette Cement Mfg. Co. v. F.T.C.,* 7 Cir., 147 F.2d 589, 593; *Loughran v. F. T.C.,* 8 Cir., 143 F.2d 431, 433.)

The rule, subject to the hereinafter discussed qualifications, is as stated by the appellant. The District Judge, contemplating this question in the instant case said:

> ". . . However, assuming a board or hearing officer were admittedly prejudiced, it would seem that a hearing before such board or officer would be manifestly unjust, and would warrant reversal of any adverse verdict . . ."

It would seem so. But how are the two propositions to compatibly lay side by side? On the one hand the law says that where there is a designated board, its exclusive jurisdiction may not be destroyed by a challenge questioning its fairness; while, on the other hand, it is recognized by all that an injustice will come from a board admittedly prejudiced.

For purposes of this opinion, I assume that exclusive jurisdiction to hear and determine the fate of Sydney Spiegel at the administrative level rested with the School Board. While I agree that the rule of necessity is a qualification of the notion that a right to a fair hearing requires nonprejudiced and unbiased hearing members, it is also true that the rule is contrary to sound public policy and will be enforced only when strict and imperious necessity can be shown.[10]

Notwithstanding that the school board is the designated hearing body (§ 21.1–152, W.S.1957, 1975 Cum.Supp.), it requires only a majority of the board to act in a hearing to suspend or dismiss teachers.[11] If an unbiased majority remains after some board members have been disqualified, the rule of necessity does not apply.

It is said in 97 A.L.R.2d, License Revocation—Bias, § 5(b), p. 1223, where the author discusses the rule of necessity:

> "However, if there is anyone else who can act in the place of the disqualified person or persons, *or if the agency may still act in the absence of the disqualified person or persons, the doctrine of necessity does not apply;* . . . (with citation)" [Parenthetical matter and emphasis supplied]

1 Am.Jur.2d, Administrative Law, § 66 "Rule of necessity," p. 68, expresses the thought as follows:

> "If there is anyone else who can act in the place of the disqualified person or persons, *or if a board or commission may act in the absence of the disqualified person or persons,* the doctrine of necessity does not apply . . . (with citation)" [Emphasis supplied]

---

9. "By specific statute—enacted after the Wyoming Administrative Procedure Act—and in contradiction of the provisions regulating other administrative agencies, only the Board can hold a hearing on a recommendation for termination of a teacher contract. The teacher 'shall be entitled to a hearing before the Board'. 21.1–158, W.S.1957 as amended (underlining supplied)."

10. See annotation entitled "Necessity as justifying action by judicial or administrative officer otherwise disqualified to act in a particular case." 39 A.L.R. 1476, at page 1479, under "b. As to officer or body having quasi judicial powers."

11. § 21.1–160, W.S.1957, 1975 Cum.Supp., subsection (c), provides:
"Majority of Board: Any action resulting in the teacher's suspension or dismissal shall be approved by a majority of the duly elected members of the board of trustees . . ."

We said in *Lake De Smet Reservoir Company v. Kaufmann,* supra, at page 96 of 75 Wyo., pages 484–485 of 292 P.2d, where the bias of a member of a water board of special commissioners was in issue:

"Had Mr. Wood withdrawn from the board during the hearing on this matter, the remaining members, being a quorum of the board could have proceeded with the establishment of the rates. In the absence of a statute providing otherwise, where authority is conferred on an administrative body of three or more members, such authority may be exercised by a majority of the members of the body or of a quorum. See 73 C.J.S., Public Administrative Bodies and Procedure, § 21.

"Since the board could have acted in this case without Mr. Wood, it is unnecessary to discuss the method of replacing an essential member of an administrative board who becomes temporarily disqualified or unable to act . . ."

In Davis, Administrative Law Treatise, Vol. 2, "Bias," § 12.04. pp. 163–164, it is said:

". . . The rule of necessity is held inapplicable when a way can be found to provide a qualified tribunal, *as by excluding from the tribunal the disqualified members,* by appointing a tribunal with a different membership, *by counting only the votes of members who are qualified,* or by resort to another tribunal already available." [Footnotes omitted] [Emphasis supplied]

I would hold the rule to be that whenever possible the fair hearing rights should be preserved even if the rule of necessity must make room for due process guarantees. Particularly is this true, as here, where a majority of the board were authorized by statute to act if, on voir dire, a minority of the members were shown to be biased and prejudiced. *Within adequate guidelines,* voir dire inquiry should be permitted of an administrative tribunal to ascertain the absence or presence of bias or prejudice of the members.

In the instant matter it would have been important for Mr. Spiegel to know what members, if any, were biased—how many biased members there were and, under the rules set out above, he could at least have sought disqualification of a number less than the majority and the remaining members would have been able to function as a board.

There are other reasons for allowing voir dire inquiry—as was said in *Federal Home Loan Bank Board,* supra:

". . . Evidence of bias or prejudice on the part of Board members would also be relevant for consideration by a court called upon to review a final Board order. See *Marquette Cement Mfg. Co. v. F.T.C.,* supra note 9, 147 F.2d at page 594."

Finally, it is important to inquire for the reason that an adjudication by disqualified officers may be a denial of due process of law.

It is said in 2 Davis, Administrative Law Treatise, supra, "Bias," § 12.04, page 165:

". . . But what is the cure? How can reviewing courts escape the rule of necessity?

"One escape route is by recognizing that in some circumstances the so-called 'necessity' may be something less than absolute. Courts are not always helpless to correct injustice, merely because the only tribunal which can adjudicate a case is disqualified. Courts can hold that a system calling for adjudication by officers who are disqualified is a denial of due process of law. Courts have sometimes so held. (Note 17)" [12]

---

12. Note 17 of the statement from *Davis,* supra, is, in pertinent part:

"The court held in *Abrams v. Jones,* 35 Idaho 532, 207 P. 724 (1922), that the right to hearing before an impartial body was denied when a dentist's license was revoked by a dental board which was accuser, prosecutor, and judge, but other deficiencies contributed to the result.

I would have, therefore, affirmed the District Court's holding that it was a denial of the appellee's right to a fair and impartial hearing for him to have been denied inquiry as on voir dire.[13]

### BOARD'S FAILURE TO SPECIFY CHARGES

██ Sydney Speigel was a continuing contract teacher who had taught for nineteen years prior to receiving the notice of termination. By statute it is provided that continuing contract teachers shall be employed . . .

"on a continuing basis from year to year without annual contract renewal . . ."
§ 21.1–154, W.S.1957, 1975 Cum.Supp.

We recognized in *Roush v. Sweetwater County School District No. 1,* Wyo., 497 P.2d 540, that a continuing contract teacher has a constitutionally-protected interest in his or her job.

We said in *Roush,* supra, at page 542:

". . . but in any event we left no doubt (referring to *Monahan v. Board of Trustees of Elementary School District No. 9, County of Fremont,* Wyo., 486 P. 2d 235, 236–237) that absent good cause

"In *State ex rel. Miller v. Aldridge,* 212 Ala. 660, 103 So. 835, 39 A.L.R. 1470 (1925), the court was so much impressed with the prejudice of a board in revoking an accountant's certificate that it specifically refused to invoke the rule of necessity. The court declared that 'the rule of disqualification is the paramount policy, and is only to yield when the necessity is so great and overwhelming, that there may not be an entire failure of justice.' 212 Ala. at page 663, 103 So. at page 838 . . ."

13. One purpose of this portion of the opinion is to direct the attention of the legislature to the dire need of independent hearing examiners. The growth of administrative law and the imminence of many more administrative hearings to come from recently-enacted legislation will alert all concerned with the need for hearing officers with the appropriate legal training. They should not be appointed by, paid by, or beholden to any agency. After the hearing they should be authorized to make a recommended decision which the agency may adopt or modify, always retaining the right of appeal by any aggrieved person.

to the contrary a continuing contract teacher has a reasonable expectation of continued employment. As observed in *Endicott v. Van Petten,* D.C.Kan., 330 F.Supp. 878, 882:

"'* * * The very purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectible interest. This type of statute gives teachers a certain degree of security in their positions and guarantees freedom to teach by protecting them from removal on unfounded charges * * *.'" [Parenthetical matter and emphasis supplied]

When a continuing contract teacher is to be terminated notice must be given under § 21.1–156, W.S.1957, 1975 Cum.Supp. The matter on appeal here was properly considered under the aegis of the Wyoming Administrative Procedure Act [§§ 9–276.19 to 9–276.22]. The notice sections of that act are found at § 9–276.25(a) and (b)(1) through (4), and provide in relevant part as follows:

"§ 9–276.25. Contested cases; procedure generally; subpoenas.—(a) *Notice to be given.*—In any contested case, all

As an example of the expanding administrative-agency area, I call attention to the Industrial Development Information and Siting Act [§§ 35–502.75 to 35–502.94, W.S.1957, 1975 Cum.Supp.]; the Wyoming Environmental Quality Act [§§ 35–502.1 to 35–502.-56, W.S.1957, 1975 Cum.Supp.]—as it affects air quality, § 35–502.16; water quality, § 35–502.18; land quality, § 35–502.20; mining activity and licenses, § 35–502.27; solid waste disposal, § 35–502.43 and § 18–330.34, W.S.1957, 1975 Cum.Supp.; variances, § 35–502.45; complaints, § 35–502.46; education code, § 21.1–41, W.S.1957, 1975 Cum. Supp.; Medical Assistance and Services Act, § 42–74, W.S.1957.

Each agency is required to file with the Secretary of State a copy of each rule of procedure adopted by it. § 9–276.22, W.S.1957, 1975 Cum.Supp.

The Secretary of State reports that 66 state agencies, 64 school districts, 11 weed and pest control districts, 33 municipalities, 36 county agencies, and the University of Wyoming and each junior college have so filed.

parties shall be afforded an opportunity for hearing after reasonable notice served personally or by mail . . .

"(b) *Statement in notice.*—The notice shall include a statement of:

\* \* \* \* \* \*

"(4) *A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a more definite and detailed statement shall be furnished.*" [Emphasis supplied]

In this case, Mr. Spiegel made timely motion for a more definite statement of the charges which had been lodged against him, as contemplated by § 9–276.25(b)(4), especially relating to the Board's allegation of

(a) conflict of philosophy, and

(b) lack of ability to work harmoniously.

The motion was denied. He was sent to defend himself against the general charges of the resolution which he said were so indefinite that he could not prepare a defense.

In contemplating such a question as this, we said in *Glenn v. Board of County Com'rs, Sheridan County,* Wyo., 440 P.2d 1, 4 (1968):

". . . The important question is whether or not the parties had fair notice of the issues involved . . ."

Does a party have fair notice of what his accusor has in mind when he is confronted with the following (from the Board's resolution)?:

". . . Further for the reason that his philosophy on teaching methods and procedures has been in conflict with that of the administration and of the Board of Trustees and that this gap in philosophy has not narrowed as anticipated with the passage of years; and further that he does not have the ability to work harmoniously and cooperatively with the ad-

ministration and Board of Trustees . · . . ."

In *Jergeson v. Board of Trustees of School District No. 7,* Wyo., 476 P.2d 481, the charge against the teacher was that

" 'Your philosophy and practice of education is detrimental to the best interests of the high school students.' "

Jergeson did not complain about the vagueness of that charge until *after* the hearing. Here the motion was timely made but the Board refused to specify the meaning of these hazy accusations.

The motion should have been granted. The appellee had a statutory and constitutional right to have it granted. For the contestant to have to defend against these vague and indefinite charges was a denial of not only his rights under the statute, but also a constitutional denial of due process.

The case of *Sorin v. Board of Education,* 39 Ohio Misc. 108, 315 N.E.2d 848 (1974) seems uniquely in point. In that case the charges against the school superintendent were, among other things, that he interjected "philosophies inconsistent with the Board of Education of Warrensville Heights." The court held:

"After a careful consideration of the charges contained in this matter, it is the opinion of this court that the charges taken one at a time or collectively are for the most part so vague and unanswerable as to set forth generalities and not specific specifications of which the plaintiff could answer; consequently, they are not in accordance with the requirements contained in R.C. 3319.16, as interpreted in the case of *State ex rel. Kohr v. Hooker* [106 Ohio App. 1, 152 N.E.2d 788], supra. See, also, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

"As stated, R.C. 3319.16 requires full specifications of the grounds for the termination of a contract, and a notice that lacks such specification is defective. The failure to do so deprives an individual of the essential elements of due proc-

ess stated in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, which held that minimum procedural safeguards are required in an administrative proceeding."

The comment of Chief Justice Gray, in the *Jergeson* dissent, seems peculiarly apropos to the matter with which we are here concerned:

". . . At the time the board served its notice it was well aware of the detail of the matters upon which it was going to rely as constituting grounds for plaintiff's dismissal. Under those circumstances § 9–276.25(b)(4) of the A.P.A., W.S.1957, 1969 Cum.Supp., provides that the notice must 'state the matters in detail' and certainly the 'shotgun' charge of paragraph 1 of the notice is not only in direct violation of that provision but to me reflects unfairness on the part of the board inasmuch as it was the accuser and plaintiff was afforded very little time within which to prepare his defense . . ." 476 P.2d, at page 488.

We agree with the District Court that the notice given Mr. Spiegel was inadequate and hold that the Board's failure to grant the motion for a more definite statement constituted an abuse of discretion amounting to error. In view of our holding on this point, it is not necessary or appropriate for us to further consider the question of whether or not it is cause for dismissal that the teacher has a difference in "philosophy" from that of his administrators or school board or that he lacks the ability to work harmoniously with them. Since these charges were not delineated in response to the motion to make more definite and certain, we cannot ascertain the wrongdoing with which Mr. Spiegel is charged any more than he could.

## MOTION FOR EXTENSION OF TIME

The motion made by the appellee that he be given adequate time to prepare a defense must be considered within the same framework that outlines the Board's reasons for refusing to make more definite and certain the charges to the effect that Mr. Spiegel's philosophy was unacceptable and that he could not work harmoniously with the administration.

The total time expanse between the resolution of the Board recommending termination and the commencement of the hearing was twenty-four days. The appellee filed a motion for an extension of time within which to prepare two days before the hearing. The appellant argues that such a motion, because it was not timely filed as provided by Rule 6(d), W.R.C.P.[14] was properly overruled. Appellee urges that this rule is intended to apply to the trial procedure and therefore should not be so interpreted as to penalize him. We tend to believe, *under the circumstances of this case,* that the appellee's interpretation is correct. Under the Rules of Civil Procedure leading up to the trial of a civil case, there are certain time frames provided for filing various pleadings, making motions, arguing motions and doing all of the other and various things considered necessary to the bringing of the civil litigation to the trial phase.

In the administrative proceeding, the various pleadings and motions not being required, the time provisions provided for them by the rules cannot be thought about as inflexible. Especially is

14. Rule 6(d), Wyoming Rules of Civil Procedure, is as follows:

"(d) For Motions; Affidavits. A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time."

this true where the administrative tribunal which filed the charges is in complete control of the procedures which govern the details of not only the hearing itself but the pattern of preparation for the hearing.

The motion for a more definite statement of the charges was timely made and if it had been granted and the charges specified in detail as we have said they should have been, it would no doubt have been clear and obvious to all concerned that the time for preparation of a defense should have been extended.

■ We affirm the District Court's holding that it was an abuse of discretion and therefore error for the administrative board to have refused to extend the time within which Mr. Spiegel could prepare his defense.

### FREEDOM OF SPEECH

" 'Who kills a man kills a reasonable creature, God's image; but he who destroys a good book, kills reason itself, kills the image of God, as it were in the eye. John Milton, *Areopagitica,* (1644), in R. M. Hutchins, ed., *32 Great Books of the Western World* 384 (1952).' "

[From appellee's brief]

The balancing and counter-balancing which this great issue requires contemplates that Mr. Spiegel may not be constituted a First Amendment eunuch just because he is a teacher—neither can he exer-

cise his rights in such a way as to destroy the system. Somewhere in between he may speak and teach; and the schools may function.

The record, together with Findings of Fact and Conclusions of Law, clearly show to this Court that Mr. Spiegel's contract was not renewed for the reason, in part at least, that he spoke out critically of schools generally and specifically the administration of the school in which he was a teacher. The criticism complained of was published in writings which were authored in pursuit of his union activities.[15]

■ We acknowledge it to be the law that a teacher has the right to criticize his or her employers.[16]

The author of the opinion in *Pred v. Board of Public Instruction of Dade County, Fla.,* 5 Cir. 1969, 415 F.2d 851, 855, said:

". . . Simply because teachers are on the public payroll does not make them second-class citizens in regard to their constitutional rights . . ."

■ It was not imperative, as contended by the Board, that Spiegel prove that the *sole* reason for his failure to have his contract renewed was his participation in constitutionally-protected activities. If his penalty was imposed by the Board for "even partially" being "in retaliation" for his exercise of a protected right such as freedom of speech, he is entitled to relief.

---

15. In commenting upon statements made by a teacher under similar circumstances, Justice Marshall of the United States Supreme Court, in *Pickering v. Board of Education,* 391 U.S. 563, 569–570, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811, said:
 ". . . The statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal

loyalty and confidence are necessary to their proper functioning . . . "

16. It was said in *Lusk v. Estes,* 361 F.Supp. 653, 660 (N.D.Tex.1973) :
 "It can no longer be seriously asserted that teachers have no right to criticize their employers. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) ; *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ; *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ; *Duke v. North Texas State University,* 469 F.2d 829 (5th Cir. 1973) ; *Fluker v. Alabama State Board of Education,* 441 F.2d 201 (5th Cir. 1971) ; . . . "

*Fluker v. Alabama State Board of Education,* 5 Cir. 1971, 441 F.2d 201.

■ Nonrenewal of a teacher's contract based in part on a protected activity and in part upon an unprotected activity is not a proper decision. *Roth v. Board of Regents of State Colleges,* (W.D.Wis.1970), 310 F. Supp. 972, 982, aff'd 446 F.2d 806, 7 Cir. 1971, reversed on other grounds 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. In *Lusk v. Estes,* 361 F.Supp. 653, 660 (N.D. Tex.1973), the court said of a teacher's right:

> ". . . this court cannot affirm the decision not to reemploy Lusk if it 'was even partially in retaliation' for Lusk's public remarks which are constitutionally guaranteed under the First Amendment, even though there were valid nonconstitutional reasons for dismissal. *Fluker v. Alabama State Board of Education,* 441 F.2d 201, 210 (5th Cir. 1971). See, *United States of America v. Northside Realty Associates,* 474 F.2d 1164, at 1171 (5th Cir. March 14, 1973); *NLRB v. Great Eastern Color Lithographic Corp.,* 309 F.2d 352, 355 (2d Cir. 1962)."

The conclusions of law authored by the Board with respect to the utterances in question relate that they were

> "in disregard of the rights and requirements of others." (Conclusion No. 22)

The conclusions further state that they constituted a neglect of duty and that

> *"Any one and all of* the foregoing oppositions, rejections, objections, actions, attitudes or statements are sufficient, good and just cause for termination of Spie-

gel's contract of employment." (Conclusion No. 27) [Emphasis supplied]

The "ORDER" then says:

> "Wherefore, it is ordered that the recommendation for termination of employment of Spiegel by the District be, and the same hereby is, approved. It is further ordered that, *for the reasons aforesaid,* Spiegel's contract of employment with the District be, and the same hereby is, terminated effective at the end of the 1972–73 school year . . ." [Emphasis supplied]

There can be no doubt, therefore, that one of the reasons for not renewing his contract was because of his criticism of the schools while in pursuit of his labor union affairs.

■ The contract teacher may not be deprived of employment contract renewal without cause. *Monahan v. Board of Trustees,* supra. Cause may not be found in a constitutionally-protected reason.[17] Even nontenured teachers cannot be dismissed for exercising constitutional rights.[18] Freedom of speech is constitutionally protected under Article 1, Section 20, of the Wyoming Constitution and the First Amendment of the United States Constitution.[19]

If the above represents the "ying," the "yang" is as appellant says in its brief:

> "Constitutionally protected free speech is not an all inclusive license to say anything at any time. Statements made in complete disregard of the rights of others are not within the right of *protected* free speech. *Dennis v. U. S.,* 341 U.S.

17. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811; *Smith v. Losee,* 10 Cir., 485 F.2d 334, cert. den. 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212; *Rampey v. Allen,* 10 Cir., 501 F.2d 1090.

18. *Adams v. Campbell County School District, Campbell County, Wyoming,* 10 Cir. 1975, 511 F.2d 1242.

19. Article 1, Section 20, of the Wyoming Constitution:

"Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right; . . ."

The First Amendment of the United States Constitution:

"Congress shall make no law . . . abridging the freedom of speech, or of the press; . . ."

494, 71 S.Ct. 857, 95 L.Ed. 1137." [Emphasis in appellant's brief]

The United States Supreme Court reaffirmed the school's duty to control and conduct the schools when, in *Tinker v. Des Moines Community School District*, 393 U.S. 503, 509, 89 S.Ct. 733, 737, 21 L.Ed.2d 731, it said:

". . . the Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools. See *Epperson v. Arkansas*, supra, 393 U.S. [97,] at 104, 89 S.Ct. [266,] at 270 [, 21 L.Ed.2d 228]; *Meyer v. Nebraska*, supra, 262 U.S. [390,] at 402, 43 S.Ct. [625,] at 627 [67 L.Ed. 1042] . . ."

The issue becomes more refined when the appellant urges that Spiegel's utterances as a union executive transcended the boundaries of his right to speak freely and became

". . . attacks on the character, reputation and intelligence of administrators and administration . . . They were attacks upon an established method and procedure necessary for operation and existance [sic] of the school system . . ." (Appellant's brief)

Mr. Spiegel, of course, counters by urging that such is not the case and that whatever he published in connection with his union activities was outside the scope of the Board's power to regulate and punish and within, therefore, his constitutionally-guaranteed right of freedom of expression. Thus, he says his statements do not constitute the cause requisite for the nonrenewal of his contract.

The District Court held the Board to have been in error for failing to renew Spiegel's contract because he exercised his

constitutionally-guaranteed right of free speech. The Court said:

"Spiegel was terminated, at least in part, for his public and private comments in union publications which are constitutionally guaranteed."

We affirm this holding.

■ The utterances of Mr. Spiegel in behalf of his union activities were protected by the United States and Wyoming Constitutions, supra. The policy of the State of Wyoming in relation to such matters is delineated in § 27–239, W.S.1957, where it is said

". . . to be the policy of the State of Wyoming that workers have the right to organize . . ."

and that in the exercise of this right

". . . workers should be free from the interference, restraint or coercion of employers of labor, or their agents in any concerted activities for their mutual aid or protection."

The District Court Judge, in his learned opinion, took notice of the freedom of expression policies of the Board itself when he observed that it encourages constructive criticism—proclaims there to be and exist a climate of administrative freedom with encouragement to speak and talk freely without fear of personal repercussion and comment of and on school policy. It strongly endorses the right to freedom of expression.[20] Teachers are encouraged to help students work through controversial issues and are promised protection against "unjust attack."

It was said in *Tinker*, supra, at 393 U.S. 506, 89 S.Ct. 736:

". . . It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate . . ."

20. The Board Policy document, under "Controversial Issues," states:
" . . . Among the rights, none is more basic than freedom to express one's opinion without fear; and no responsibility is

more vital than that of submitting all opinions to the scrutiny of informed reason and respecting even those with whom one differs . . ."

In *Tinker*, at 393 U.S. 508, 89 S.Ct. 738, the Court goes on to say:

"In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint . . ."

68 Am.Jur.2d, Schools, § 182, p. 513, states:

"Under the free speech clause of the First Amendment, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment, in the absence of proof of false statements knowingly or recklessly made by him, and public school teachers may not constitutionally be compelled, as a condition of retaining their employment, to relinquish the First Amendment rights that they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work . . ."

The Court observed in *Lusk v. Estes*, supra, at 361 F.Supp., page 660:

". . . School authorities must nurture and protect not extinguish and inhibit, the teacher's right to express his ideas. Only if the exercise of these rights by the teacher materially and substantially impedes the teacher's proper performance of his daily duties in the classroom or disrupts the regular operation of the school will a restriction of his rights be tolerated. *Pred v. Board of Public Instruction,* 415 F.2d 581 (5th Cir. 1969) . . . ."

The Board could not penalize Speigel unless his activities outside the school house disrupted or impaired discipline in the teaching processes and substantially interfered with the requirements and discipline in the operation of the school.[21]

In *Pickering v. Board of Education,* supra, at 391 U.S., 563, page 574, 88 S.Ct. 1731, page 1738, where a teacher was dismissed for writing a letter to the editor criticizing his board and administrative supervisor for the handling of public funds, the United States Supreme Court held that,

". . . in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment . . ."

In reaching its conclusion that there was inadequate cause for termination, the Court, in *Pickering*, reasoned that the First Amendment of the United States Constitution has been held to prohibit a state from authorizing damage recovery by a public official for defamatory statements directed at him except where such statements are shown

"to have been made either with knowledge of their falsity or with reckless disregard for their truth or falsity . . ."[22]

The *Pickering* Court concludes therefrom that if the teacher had been a member of the general public, the State's power to afford the board the right to sue him would have been limited by the New York Times rule. Acknowledging the right of teachers to speak on matters of public concern as being protected by the First Amendment, even though their criticism is pointed at their superiors,[23] and recognizing that

21. *Fluker v. Alabama Board of Education,* supra.

22. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

23. *Garrison v. Louisiana,* 379 U.S. 64, 85 S. Ct. 209, 13 L.Ed.2d 125 (1964); *Wood v. Georgia,* 370 U.S. 375, 82 S.Ct. 1364, 8 L. Ed.2d 569 (1962).

termination of employment is a potent means of inhibiting free speech, the Court held:

". . . However, in a case such as the present one, in which the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a teacher, we conclude that it is necessary to regard the teacher as the member of the general public he seeks to be."

■ In the instant case, the standard against which we must test Spiegel's union writings is as though he were a member of the general public. There is no proof that the statements made by him in pursuit of his union activities were made

"with knowledge of their falsity or with reckless disregard for their truth or falsity." (*New York Times v. Sullivan*, supra)

and there is no proof that his published statements have impeded the performance of his teaching duties or in any way disrupted the functions of the school. The criticized publications, therefore, furnish no cause or grounds for failure to renew the teacher's employment contract.

## SUFFICIENCY OF THE EVIDENCE

■ In Mr. Speigel's appeal to the District Court from the Board's decision not to renew his contract, it was his burden to prove the insufficiency of the evidence to sustain the board's decision. See *Adams v. Campbell County School District, Campbell County, Wyoming*, 10 Cir. 1975, 511 F.2d 1242; *Smith v. Losee*, 10 Cir. 1973, 485 F. 2d 334; and *Fluker v. Alabama State Board of Education*, 5 Cir. 1971, 441 F.2d 201.

The Court found he had carried the burden and the evidence against him was determined to be insufficient to constitute cause for nonrenewal and held:

". . . that the only direct items of evidence against him, all of which were admitted to, and corrected, by him, were

so trivial and so remote from the date of the hearing that they did not justify termination, and that to base termination on those incidents would be oppressively harsh; . . ."

and further held with respect to some of the Board's findings,

". . . That the findings of fact are contrary to the evidence and are not supported by substantial evidence; . . ."

For the Court below to have reached these conclusions, it must have adhered to the applicable statutory standard for review, which is, in pertinent part:

"(c) The court's review pursuant to the provisions of this section shall be limited to a determination that:

"(iv) The findings of fact in issue in a contested case are supported by substantial evidence; . . ." (§ 9–276.32, W.S.1957, 1975 Cum.Supp.)

The substantial evidence test has been followed by us in *Howard v. Lindmier*, 67 Wyo. 78, 214 P.2d 737, 740 (1950); *Rayburne v. Queen*, 78 Wyo. 359, 326 P.2d 1108, 1109 (1958); and *J. Ray McDermott & Co. v. Hudson*, Wyo., 348 P.2d 73, 76 (1960).

■ The appellate court, in considering an appeal from an administrative tribunal, is bound by the rule announced in *Howard v. Lindmier*, supra, involving an appeal from the District Court reversing the action of the Board of Land Commissioners. We said:

". . . Even if the court comes to a different conclusion than that of the Land Board, considering the evidence as a whole, that . . . is in no sense conclusive. The court must go further. It must be able to determine that the Land Board might not reasonably, under the same state of facts, have come to a different conclusion; . . . *yet the rule adopted and followed by appellate courts here and elsewhere of deferring their opinions as to the weight and credibility of the evidence to that of the trier of the facts in the first instance should be*

*adhered to in land lease cases."* [Emphasis in original text]

What, then, is "substantial evidence" as contemplated by § 9-276.32, W.S.1957, 1975 Cum.Supp.?

It was said in *Bortz Coal Co. v. Air Pollution Commission*, 2 Pa.Cmwlth. 441, 279 A.2d 388, 397, 48 A.L.R.3d 311, 322:

". . . 'Substantial evidence' is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and more is required than a mere scintilla of evidence or suspicion of the existence of a fact to be established. See *Pennsylvania State Board of Medical Education and Licensure v. Schireson*, 360 Pa. 129, 61 A.2d 343 (1948); *Erie Resistor Corporation v. Unemployment Compensation Board*, 194 Pa.Super. 278, 166 A.2d 96 (1960)."

The test as to whether or not there is substantial evidence has been said to be

". . . whether the administrative decision finds reasonable support in substantial evidence, whether the evidence reasonably tends to support the findings, or, it has been indicated, whether the decision is not clearly contrary to the overwhelming weight of the evidence." 2 Am.Jur.2d Administrative Law § 688. "What constitutes substantial evidence.", p. 574. (With extensive footnote citations)

In interpreting the term "substantial evidence" as contemplated by the Federal Administrative Procedure Act the United States Supreme Court, in *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S. Ct. 1018, 1026, 16 L.Ed.2d 131, said:

". . . We have defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. of New York v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be

drawn from it is one of fact for the jury.' *National Labor Relations Board v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660. This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent the administrative agency's finding from being supported by substantial evidence. *National Labor Relations Board v. Nevada Consolidated Copper Corp.*, 316 U.S. 105, 106, 62 S.Ct. 960, 961, 86 L.Ed. 1305; *Keele Hair & Scalp Specialists, Inc. v. FTC*, 5 Cir., 275 F.2d 18, 21.'"

 In *Howard v. Lindmier*, supra, at page 740 of 214 P.2d, we said:

". . . the term 'substantial evidence' does not include the idea of weight of evidence, although it is more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .'"

In the instant matter, the first reviewing court found that certain of the Board's findings of fact, resulting in the termination of Mr. Spiegel's employment contract, were

"contrary to the evidence"

and

"not supported by substantial evidence . . ."

If we were to reverse the lower Court, we would have to be able to conclude— from a review of the entire record that, in discharging its review duties, the holding was contrary to the evidence—that the Board's findings *were* supported by substantial evidence and that the lower Court was patently wrong in holding that they *were not* so supported. This we cannot do.

 Applying the foregoing definitions, standards and tests for use and application of the substantial evidence rule, we are compelled to hold, as we do, that the Board, given the facts in this record, could not reasonably, and, absent action

characterized by arbitrariness, capriciousness and bias, have reached the conclusion it did. We, therefore, find that the evidence was insufficient to support a conclusion that there was cause to terminate.

District Court Judge Hamm said, after a thorough, searching inquiry of the record and an analysis of the findings of fact made by the Board:

"The only items I can find that have either been clearly proven or admitted are: (1) failure to submit a lesson plan which occurred but once in 1966, 7 years prior to the hearing, and that submission of lesson plans is no longer required; (2) his objection to the method of taking attendance, apparently in 1972, about 1 year prior to the hearing, which method was changed in accordance with his proposal; (3) the rope incident which occurred but once in either 1970 or 1971; and (4) his leaving the building once in 1970, 3 years before the hearing. He denied leaving the building in 1973. Finding No. 15 is correct, but as I have said, he had a constitutionally protected right to make the statements. Even if it be assumed they were not so protected, the bulk of the comments came from a letter written in 1966, 7 years before the hearing. To terminate a man with 19 years [sic] service for such trivial items occurring so long before any charges were filed concerning them seems unjust and unduly harsh to me.

"The above review demonstrates the hostility of the Board; the need for voir-dire; the deprivation of constitutional rights; failure to find substantial basic facts; and failure to provide a bona fide impartial hearing to determine whether there was just cause for termination."

We agree with and confirm these findings and conclusions of the District Court Judge and affirm his holding that there was not substantial evidence of cause to

justify the Board's failure to renew the teacher's contract.[24]

We are compelled to add this:

The remote and picayune characteristics of the evidence relied on by the Board not only fails to furnish the quantum of substantial evidence which would support termination, but it describes, sadly, an atmosphere and attitude of bias and prejudice which permeates this entire relationship.

## CONCLUSION

The Judge of the District Court summarized his conclusions as follows:

". . . I think the Board erred in refusing to permit voir-dire; that it did not give Spiegel adequate notice of the charges against him; that it should have granted his motions for more definite statement and extension of time; that it violated his right of freedom of speech granted him by the Constitutions of the United States and the State of Wyoming, the laws of the State of Wyoming, and the policies, rules and regulations of School District No. 1; that the only direct items of evidence against him, all of which were admitted to, and corrected, by him, were so trivial and so remote from the date of the hearing that they did not justify termination, and that to base termination on those incidents would be oppressively harsh; and that he did not receive a fair and impartial hearing.

"Consequently, I am compelled to find that the Board did not act impartially; and its actions and decision were arbitrary and characterized by an abuse of discretion; that the findings of fact are contrary to the evidence and are not supported by substantial evidence; and that the decision of the Board is not in conformity with law and with its own announced policies and regulations, in the particulars set forth in this opinion."

---

24. The single exception to this statement is that the majority of the Court is not in agreement with the expressions of Judge Hamm concerning voir dire—at least as that subject is considered in *this* opinion.

The District Court, therefore, found *Monahan v. Board of Trustees*, supra, to be applicable, in which we held that before a continuing contract teacher could be discharged

". . . There must not only be good cause but there must be substantial evidence before the board to show that there is good cause. Absent either, a decision on the part of the board to terminate will be arbitrary."

The *Monahan* ruling and the Court's summary above recited express our finding and holding for the reasons and under the authority set out herein. We thereby affirm the District Court's reversal of the order of the appellant-School Board which had terminated the employment of the teacher.

GUTHRIE, C. J., and THOMAS, J., concurring and dissenting in part.

McCLINTOCK, J., specially concurring.

RAPER, J., did not participate.

GUTHRIE, Chief Justice, with whom THOMAS, Justice, joins, concurring and dissenting in part.

I concur in the result and affirmance of the trial court's judgment and join in the majority opinion except as to those portions thereof which are hereinafter set out.

I must most strongly dissent from that portion of the opinion which affirms the holding of the trial court "that it was a denial of the appellee's right to a fair and impartial hearing for him to have been denied inquiry as on voir dire." I cannot approve any opinion which would result in the addition of such a requirement to the proceedings of administrative bodies within this state. Contrary to the assumption of the trial court, administrative bodies in their performance of these functions must be compared with judges, not juries.

The parties herein have cited no authority, nor has the writer found any, which has given judicial recognition to the propriety of attaching a voir dire proceeding

to an administrative hearing, nor any authority where its denial before an administrative body was deemed error. Thus, I will presume counsel found no such authorities, *Nation v. State ex rel. Fire Fighters Local 279, I.A.F.F.*, Wyo., 518 P. 2d 931, 933, and authorities cited. The case of *Duffield v. Charleston Area Medical Center, Inc.*, 4 Cir., 503 F.2d 512, is in no manner applicable or helpful for the reason that in that case the board allowed the request for voir dire, so that this question could never have become the basis of decision. I would term such a procedure unduly burdensome and essentially ineffective; and without knowledgeable and able control, such as a judge might supply, it could become an instrument of interminable delay and confusion. Its probable effect might be to eliminate the rule of necessity mentioned in Justice Rose's opinion, and which is a necessary part of administrative proceedings. Some body or group must be able to dispose of such matters, and in this instance the only possibility is the school board, *Federal Trade Commission v. Cement Institutes*, 333 U.S. 683, 68 S.Ct. 793, 803, 92 L.Ed. 1010, rehearing denied 334 U.S. 839, 68 S.Ct. 1492, 92 L.Ed. 1764.

Nor do I believe that an aggrieved party could be a victim of a decision by a biased, prejudiced board without relief, particularly if he at the time of hearing requested that the members of said body who might be prejudiced should recuse themselves; and that in event of their failure to do so, if the party asserting prejudice could produce such evidence or did thereafter discover evidence that there was bias and prejudice on the part of the board which deprived him of a fair hearing and affected the decision, it might be received under Rule 72.1(h), W.R.C.P. This statement must not be construed as in any manner suggesting that the members of such administrative bodies are any less men of probity or integrity, or insensible to their duties, than are judges. I do not deem it improper to suggest that such bodies have

the power, and that it may be desirable, to adopt a rule covering the disqualifications of its members. However, this is a mere suggestion inasmuch as there is no due process question in this case involving Spiegel because a disposal hereof favorable to him has been made on other grounds.

McCLINTOCK, Justice (specially concurring).

I concur in the affirmance of the judgment of the court below on the basis that the action of the school board is shown to have amounted at least partially to a discharge in violation of First Amendment rights of the petitioner. However, notwithstanding the considerable importance of other questions considered in the majority opinion, I believe that consideration thereof was rendered unnecessary by our decision upon the big point in the case and would therefore say that my concurrence should not be taken as either acquiescence with or dissent from these other views. See my similar concurrence in *Stuebgen v. State*, Wyo., 548 P.2d 870 (1976).